IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NORMAN V. WHITESIDE,

        Plaintiff,

    vs.                            Civil Action 2:08-CV-875
                                        Judge Graham
                                        Magistrate Judge King

TERRY COLLINS, *et al.*,

        Defendants.


## ORDER AND
## REPORT AND RECOMMENDATION

This is a civil rights action in which plaintiffs, state inmates proceeding without the assistance of counsel, allege that defendants violated plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff Norman Whiteside also alleges that defendants discriminated against him. Plaintiffs seek declaratory, injunctive and monetary relief. This matter is before the Court on several pending motions.

## I.    PROCEDURAL BACKGROUND

During the events giving rise to this action, Plaintiff Whiteside was initially incarcerated at Madison Correctional Institution ("MaCI") in July 2006 and later transferred to Ross Correctional Institution ("RCI") on February 1, 2007. *Verified Complaint*, ¶¶ 2, 20 and 36, Doc. No. 4 ("*Complaint*"). He filed this action on September 18, 2008, naming 23 individual defendants, including Terry Collins, the director of the Ohio Department of Rehabilitation and Correction

("ODRC"), and MaCI and RCI employees. *Id.* at ¶¶ 3-19.[1] On February 27, 2009, defendants moved to dismiss the *Complaint*. *Defendants' (Jeanetta Turner, D Lambert, Guy, Lt Willingham, Denise Hinton, Terrill, Steve Perry, P Shoemaker, Jan Spearry, Gary Sorrell, David Baker, Marc Stanley, Jim Gossard, Terry Collins, Michael Sheets, Trevor Clark, Alan Lazaroff, Melody Haskins, Virginia Workman and Robert Whitten) Motion to Dismiss Plaintiff's Complaint*, Doc. No. 14 ("*Motion to Dismiss Original Complaint*").

An amended complaint was filed later, incorporating by reference the initial *Complaint* and including additional parties and claims. *Amended Complaint*, Doc. No. 15 ("*Am. Complaint*"). Three inmates, Todd Huston, Terrance Greathouse and Michael A. Gover, were added as plaintiffs. *Am. Complaint*, ¶ 64. Five individuals, R. Anderson, Jon Pence, Debora Timmerman-Cooper, Doug Richardson and Brian Cook, were added as defendants. *Id.* at ¶¶ 53, 65-67.[2] Defendants moved to dismiss the *Amended Complaint* and requested that the Court conduct a screening of the *Amended Complaint*. *Defendants' (Jeanetta Turner, D Lambert, Guy, Lt Willingham, Denise Hinton, Terrill, Steve Perry, P Shoemaker, Jan Spearry, Gary Sorrell, David Baker, Marc Stanley, Jim Gossard, Terry Collins, Michael Sheets, Trevor Clark, Alan Lazaroff, Melody Haskins, Virginia Workman and Robert Whitten) Motion to Dismiss*

---

[1]Plaintiff Whiteside also sued unidentified individuals in their individual capacity. *Id.* at ¶ 19. Defendants Collins and Michael Sheets, RCI Warden, are sued in their individual and official capacities, while the remaining defendants are sued in their individual capacity. *Id.* at ¶¶ 3-19.

[2]Plaintiffs do not specifically list "Lt. Thompson," who was named in the initial *Complaint*, as a defendant in the *Amended Complaint*. Accordingly, it is not immediately clear whether or not plaintiffs intend to pursue claims against Lt. Thompson.

*Plaintiff's Amended Complaint*, Doc. No. 17 ("*Defendants' Motion to Dismiss Am. Complaint*").[3]

Thereafter, Plaintiffs Whiteside, Greathouse and Gover filed a motion for a temporary restraining order and/or preliminary injunction, Doc. No. 21 ("*First Motion for Temporary Restraining Order*"), and Plaintiff Whiteside filed a second motion for a temporary restraining order and/or preliminary injunction, Doc. No. 37 ("*Second Motion for Temporary Restraining Order*"). Defendants filed motions to stay consideration of these motions pending the Court's resolution of the *Motion to Dismiss Am. Complaint.* Doc. Nos. 28, 44. Plaintiff Whiteside responded by filing motions to hasten consideration of his motion for a temporary restraining order and/or preliminary injunction, Doc. No. 37, and a motion to show cause. Doc. Nos. 46, 50 and 52.

Defendants R. Anderson and Jon Pence, who were served on June 18, 2009, Doc. Nos. 47 and 48, also moved to dismiss the *Complaint* and *Amended Complaint. Defendants' (Pence and Anderson) Motions to Dismiss, Motion for Screening Order and Motion to Sever Plaintiffs*, Doc. No. 49 ("*Motion of Defendants Pence and Anderson*").[4] In addition, Defendants Pence and Anderson moved for a screening order of the *Amended Complaint* and moved to sever the case so that each plaintiff be

---

[3]The Certificate of Service reflects that only Plaintiff Whiteside was served with a copy of this filing. *Id.*

The Court previously determined that the *Motion to Dismiss Original Complaint* was moot. *Order*, Doc. No. 18. However, the *Motion to Dismiss Am. Complaint* specifically requested that the Court consider the *Motion to Dismiss Original Complaint* as moving to dismiss the original *Complaint* and *Amended Complaint.* Plaintiffs Whiteside, Greathouse and Gover have substantively responded to the *Motion to Dismiss Original Complaint.* *See* Doc. Nos. 29, 31, 33. Accordingly, the Court will consider *infra* the arguments contained in the *Motion to Dismiss Original Complaint* as to these plaintiffs' claims.

[4]The Certificate of Service reflects that only Plaintiff Whiteside was served with a copy of this filing. *Id.*

required to proceed separately and pay a filing fee. *Id*. Plaintiffs Whiteside, Greathouse and Gover opposed this motion. Doc. No. 51.[5]

The Court shall address each of these motions.

## II.   MOTION TO SHOW CAUSE, DOC. NO. 50

After Plaintiffs Whiteside, Greathouse and Gover filed motions for a temporary restraining order and/or preliminary injunction, the Court ordered defendants to respond to such motions within 10 days. *Order*, Doc. Nos. 23, 39. In response, defendants filed motions to stay discovery and to stay consideration of these motions pending the Court's resolution of the motions to dismiss. Doc. Nos. 28, 44.

Plaintiff Whiteside moved the Court for an order to show cause why a temporary restraining order and/or preliminary injunction should not issue and why defendants should not be held in contempt "for not responding to or otherwise not obeying Court orders previously issued." Doc. No. 50, p. 1. Plaintiff argues that defendants' motions to stay are non-responsive and "unorthodox," which are not supported by "law or precedent." *Id*.

This Court disagrees. Although defendants did not respond substantively in the manner in which Plaintiff Whiteside expected, defendants nevertheless complied with the Court's prior *Orders* by filing the motions to stay in response to the motions for a temporary restraining order and/or preliminary injunction. *See* Doc. Nos. 28, 44. Accordingly, the Magistrate Judge **RECOMMENDS** that Plaintiff Whiteside's motion to show cause, Doc. No. 50, be **DENIED**.

---

[5]The Court already conducted an initial screen of the original *Complaint*, which the *Amended Complaint* incorporates by reference. *Order*, Doc. No. 3; *Am. Complaint*. Accordingly, the Court **DENIES** the request for a screening order.

**III. MOTION FOR LEAVE TO AMEND, DOC. NO. 35**

On June 11, 2009, the Court granted Plaintiff Whiteside's motion for leave to supplement his memorandum opposing defendants' motion to dismiss, Doc. No. 31. *Order*, Doc. No. 33. Subsequently, plaintiff filed a motion for leave to amend his prior motion to supplement, contending that he inadvertently omitted "the most important and relevant matters[.]" Doc. No. 35, p. 1. Defendants have not filed a response to this motion.

Plaintiff Whiteside's motion to amend his motion to supplement the memorandum opposing the defendants' motion to dismiss, Doc. No. 35, is **GRANTED**.

**IV. EXHAUSTION**

Defendants allege that each of the named plaintiffs failed to exhaust remedies as to each asserted claim and as to each defendant. *Motion to Dismiss Original Complaint*, p. 8; *Motion of Defendants Pence and Anderson*, pp. 9-10.

The Prison Litigation Reform Act of 1996 ("PLRA") requires a prisoner to exhaust administrative remedies available to the prisoner prior to filing an action in a federal court. 42 U.S.C. § 1997e(a). The PLRA states in pertinent part as follows:

> No action shall be brought with respect to prison conditions under [section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*. The plaintiff-prisoner bears the burden of proving that a grievance has been fully exhausted. *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002), *overruled on other grounds by Jones v. Bock*, 549 U.S.

199, 213-17 (2007). Although exhaustion is not a jurisdictional predicate, it is nevertheless mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative system would appear to the inmate to be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

"[I]f a complaint contains claims that are exhausted and claims that are not exhausted, the district court should proceed with the exhausted claims while dismissing the claims that are not exhausted and should not dismiss the complaint in its entirety." *Grinter v. Knight*, 532 F.3d 567, 578 n.9 (6th Cir. 2008) (citing *Jones*, 549 U.S. 199, 218-23).

### A. Claims of Plaintiff Whiteside

Plaintiff Whiteside represents that he has fully exhausted his claims. Doc. No. 29, p. 2.

### B. Claims of Plaintiff Huston

Plaintiff Huston appears to assert claims based on the Due Process Clause of the Fourteenth Amendment. *Am. Complaint*, ¶ 67. However, the Court notes that court mail addressed to Plaintiff Huston has been returned as undeliverable since April 30, 2009. *See* Doc. Nos. 24, 25, 36, 43 and 45.[6] One of these pieces of returned mail contained the notation "WENT HOME." Doc. No. 43. Therefore, based on the current record it is unclear if Plaintiff Huston intends to pursue any of his claims. Accordingly, Plaintiff Huston is **ORDERED** to specify in writing his intentions to pursue his claims within twenty (20) days from the

---

[6]As discussed *supra*, the Court also notes that defendants failed to serve copies of the motions to dismiss on Plaintiff Huston as required by Fed. R. Civ. P. 5.

date of this *Order and Report and Recommendation*. Plaintiff Huston is specifically **ADVISED** that his failure to respond will be construed as an abandonment of his claims and will result in dismissal of those claims.

C.   **Claims of Plaintiffs Greathouse and Gover**

Plaintiffs Greathouse and Gover allege that defendants violated their constitutional rights by wrongfully denying them access to the courts. *Am. Complaint*, ¶ 69; Doc. No. 29, pp. 8-9. In their memorandum opposing defendants' motions to dismiss, plaintiffs do not allege that they exhausted their administrative remedies. Doc. 29, pp. 2-3.[7] Instead, Plaintiffs Greathouse and Gover implicitly concede that they did not exhaust their remedies because attempting to do so would have been futile. *Id*.

As discussed *supra*, an inmate must proceed through the administrative system even if doing so would appear to the inmate to be "futile." *Hartsfield*, 199 F.3d at 308-10. Here, based on their own admission, Plaintiffs Greathouse and Gover have not met their burden in demonstrating exhaustion. Accordingly, the Magistrate Judge **RECOMMENDS** that, as to the claims of Plaintiffs Greathouse and Gover, *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** and that the claims of Plaintiffs Greathouse and Gover be

---

[7]The memoranda filed in opposition to defendants' motions to dismiss and defendants' motions to stay were signed by Plaintiff Whiteside with "agreement" by Plaintiffs Greathouse and Gover. Doc. Nos. 29, 51. Accordingly, even though defendants may not have served these plaintiffs with copies of the motions to dismiss, these plaintiffs responded substantively to the dispositive motions.

**DISMISSED without prejudice.**[8]

## III. CLAIMS OF PLAINTIFF WHITESIDE

As the Court construes the *Complaint* and *Amended Complaint*, Plaintiff Whiteside asserts the following claims:

(1) discrimination and/or disparate treatment;

(2) violation of equal protection rights;

(3) violation of due process rights in connection with disciplinary proceedings;

(4) violation of due process rights as to being charged with violating rules under O.A.C. § 5120-9-06(C), specifically Rules (C)(28), (C)(50) and (C)(51) because these rules lack "fair notice";[9]

(5) violation of freedom of expression because he was told that he could not use the words "mop closet" in his letters

---

[8]Because it is unclear at this time whether or not only Plaintiff Whiteside's claims will proceed, the Court **DENIES without prejudice** defendants' request to sever the claims and parties in this case. *Motion of Defendants Pence and Anderson*.

[9]Plaintiff Whiteside does not specifically allege in the *Complaint* that (C)(51) lacks fair notice. *Complaint*, ¶¶ A, 24, 26 and 32. In later filings, he alleges that (C)(51) also lacks fair notice. Doc. No. 29, pp. 11-12. However, because Plaintiff Whiteside initially alleges that "other rules under O.A.C. § 5120-9-06" lack fair notice, *Complaint*, ¶ 24, the Court will liberally construe the allegations in the *Complaint* to include Rule (C)(51).
Section 5120-9-06 sets forth inmate rules of conduct and provides in pertinent part:

(C) Rule violations:

       *       *       *       *

(28) Forging, possessing, or presenting forged or counterfeit documents;

       *       *       *       *

(50) Possession of property of another;

(51) Possession of contraband, including any article knowingly possessed which has been altered or for which permission has not been given[.]

O.A.C. § 5120-9-06(C).

to other inmates;[10]

(6) denial of access to the courts in violation of ODRC Policy 59-LEG-01 by (a) denying assistance to the extent that "legal matters suffer"; (b) withholding access to his legal materials; and (c) failing to copy his legal materials "because he does not have adequate funds in his account"; and

(7) retaliation in response to his "exercise of [First Amendment] rights[.]"

*Complaint*, *Preliminary Statement*, ¶ A; *Am. Complaint*, ¶ A; *First Motion for Temporary Restraining Order*, pp. 1-2.

Plaintiff Whiteside asserts these claims pursuant to 42 U.S.C. § 1983.[11] To state a colorable claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal constitution or laws by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). To succeed on a claim for a violation of § 1983, a plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him or her of his or her rights secured by the United States Constitution or its laws. *See Waters v. City of Morristown,* 242 F.3d 353, 358-59 (6th Cir. 2001). Because § 1983 is a method for

---

[10]The Court relies on Plaintiff Whiteside's clarification of this claim in his opposition to defendants' motions to dismiss, wherein he specifically complains about the prohibition of using the words "mop closet." Doc. No. 29, pp. 14-15.

[11]Section 1983 provides in relevant part:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Defendants have moved to dismiss Plaintiff Whiteside's claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983); *Carter v. Welles-Bowen Realty, Inc.*, 493 F. Supp. 2d 921, 923 (S.D. Ohio 2007). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). Recently, the Supreme Court of the United States explained that "a court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* In addition, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). However, a plaintiff's ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

10

action will not do[.]" *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Court will address each claim in turn.

**A.    Equal Protection Clause / Discrimination / Disparate Treatment**

Plaintiff Whiteside alleges that defendants discriminated against him and subjected him to disparate treatment in violation of his rights under the Equal Protection Clause to the Fourteenth Amendment. *Complaint*, ¶ A; *Am. Complaint*, ¶ A. Defendants move to dismiss these claims because, *inter alia*, they are vague and conclusory. *Motion to Dismiss Original Complaint*, pp. 5-6; *Motion to Dismiss Amended Complaint*; *Motion of Defendants Pence and Anderson*, pp. 6-8.

The Equal Protection Clause applies to states and requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV. To state an equal protection claim in the prison context, a plaintiff must allege that he was treated differently than other similarly situated prisoners. *See McCleskey v. Kemp, Supt. Ga. Diagnostic and Class. Center*, 481 U.S. 279, 292-93 (1987). However, a plaintiff does not establish "a violation of his equal protection rights simply by showing that other inmates were treated differently. He would have to show that he 'was victimized because of some suspect classification, which is an essential element of an equal protection claim.'" *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (quoting

11

*Booher v. United States Postal Serv.*, 843 F.2d 943, 944 (6th Cir. 1988)). Suspect classes include those based on race, religion and national origin. *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998). Imprisonment, however, is not considered to be a suspect class. *Id.*

In the present case, Plaintiff Whiteside complains that he was treated differently than white inmates and "other inmates" charged with similar rules violations. *See Complaint*, ¶¶ 29-30, 35, 38-40, 62. Specifically, he alleges that Defendant Denise Hinton required him

> to send all of his legal papers out of the institution because a case number wasn't written on each and every piece of legal paper, and other white inmates were not subject to such onerous obligations. This also regarded Plaintiff [Whiteside] not being permitted to possess copies of legal papers which bore the names of other people.

*Id.* ¶ 38.[12] Other than this conclusory speculation, he offers no other allegation that Defendant Hinton, or any other defendant, treated him differently because of his race, which in any event is not immediately identifiable from the *Complaint* or the filings in response to the motions to dismiss. *Id.* at ¶¶ 29-30, 35, 38-40, 62; Doc. Nos. 29 and 51. However, Plaintiff Whiteside must offer more than his conclusions to establish grounds for relief. *See Twombly*, 550 U.S. at 555.

---

[12]Plaintiff Whiteside alleges that he "effected a declaration regarding the matters of ¶¶ 36-38 above per 28 USC § 1746 which was used in the case before this court known as *Carter v. Sheets*, Case No. C2-06-918 adopted herein by reference." *Complaint*, ¶ 39. However, this generalized statement fails to explain how the declaration specifically supports Plaintiff Whiteside's equal protection / discrimination claim. Moreover, he provides no docket entry for this declaration. A brief review of the docket in *Carter* reveals that there are 86 docket entries and none of the entries appear to be the referenced declaration. The Court is under no obligation to open and pore through each of the 86 entries and their attachments filed in a separate action, in which Plaintiff Whiteside was not a party and which was dismissed on June 19, 2009, in the hope of locating a declaration that may, or may not, support his claim. *Cf. InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (stating that the Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

In addition, to the extent that Plaintiff Whiteside complains that "other inmates" who violated the same rules were treated more favorably, this argument must fail. As discussed *supra*, prisoners are not considered members of a protected suspect class. *See also Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (citing *Jackson*, 411 F.3d at 619). Moreover, the Supreme Court previously has stated that

> the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977). In addition,

> [s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Pell v. Procunier*, 417 U.S. 817, 827 (1974). Therefore, simply because Plaintiff Whiteside may have received a different punishment than other inmates who committed the same violation does not establish a cause of action.

Accordingly, the Magistrate Judge **RECOMMENDS** that, as to Plaintiff Whiteside's equal protection / discrimination / disparate treatment claims, *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** and that these claims of Plaintiff Whitehouse be **DISMISSED**.

## B.    Access to the Courts

Plaintiff Whiteside alleges that defendants denied him access to the courts, in violation of his constitutional rights. *Complaint; Am. Complaint*. Specifically, he complains that defendants (a) denied assistance to the extent that "legal matters suffer"; (b) withheld access to his legal materials; and (c) failed to copy his legal materials "because he does not have adequate funds in his account." *Id*. Defendants move to dismiss these claims because, *inter alia*, they are vague and conclusory. *Motion to Dismiss Original Complaint*, pp. 5-6; *Motion to Dismiss Amended Complaint; Motion of Defendants Pence and Anderson*, pp. 6-8.

Although prisoners enjoy a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), that right is not without limit, *Lewis v. Casey*, 518 U.S. 343, 349 (1996). The Sixth Circuit explains that the constitutional right "is not a generalized right to litigate but a carefully-bounded right":

> *Bounds* does not guarantee inmates the wherewithal to
> transform themselves into litigating engines capable of
> filing everything from shareholder derivative actions to
> slip-and-fall claims. The tools it requires to be provided
> are those that the inmates need in order to attack their
> sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of
> any other litigating capacity is simply one of the
> incidental (and perfectly constitutional) consequences of
> conviction and incarceration.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 355). "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Id*.

Moreover, a plaintiff-prisoner claiming the denial of his right of

access to courts must show that he suffered an "actual injury" that was caused by more than mere negligence on the part of prison officials. *Lewis*, 518 U.S. at 349; *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) ("[W]hen access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs."). *Cf. Gibbs v. Hopkins*, 10 F.3d 373, 379 (6th Cir. 1993) (noting that prison officials' negligent failure to conduct a monthly review would not be actionable). Accordingly, in order to prevail on a claim of denial of the right of access to the courts, a prisoner must show actual prejudice to a nonfrivolous claim. *Hadix v. Johnson*, 173 F.3d 958, 964 (6th Cir. 1999); *Jackson v. Gill*, No. 03-5045, 92 Fed. Appx. 171, 173 (6th Cir. Feb. 3, 2004) (citing *Lewis*, 518 U.S. at 351). "Actual prejudice" may include the dismissal of a case, an inability to file a complaint or the failure to meet a court-imposed deadline. *Jackson*, 92 Fed. Appx. at 173. *See also Winburn v. Howe*, No. 00-2243, 43 Fed. Appx. 731, 733 (6th Cir. Mar. 21, 2002) ("An 'actual injury' does not occur 'without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented.'") (quoting *Root v. Towers*, 238 F.3d 423 (6th Cir. 2000)).

In the case *sub judice*, although Plaintiff Whiteside complains that defendants impeded his access to the courts, he fails to allege that this alleged impediment resulted in actual injury to him. "There is no generalized 'right to litigate' which is protected by the First Amendment." *Thomas v. Rochell*, 47 Fed. Appx. 315, 317 (6th Cir. 2002). Therefore, generalized allegations that defendants withheld or confiscated his legal papers or refused to assist him are insufficient

where he does not specifically identify how defendants' actions actually prejudiced him. *See*, *e.g.*, *Fitts v. Sicker*, 232 Fed. Appx. 436, 442 (6th Cir. Feb. 8, 2007). Finally, Plaintiff Whiteside's claim that he was denied access to the courts because defendants did not have adequate funds in his account is without merit. "The right of access to the courts does not require that prison officials provide free, unlimited access to photocopying machines." *Fazzini v. Gluch*, 875 F.2d 863, 1989 U.S. App. LEXIS 7288, *5 (6th Cir. 1989). *See also Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) ("Moreover, Congress's refusal to subsidize a prisoner's exercise of his First Amendment rights does not constitute a violation of those rights.").

Accordingly, the Magistrate Judge **RECOMMENDS** that, as to Plaintiff Whiteside's claims based on access to the courts, *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** and that these claims of Plaintiff Whitehouse be **DISMISSED**.

### C.    Freedom of Expression

Plaintiff Whiteside alleges that defendants violated his freedom of expression because he was told that he could not use the words "mop closet" in his letters to other inmates. *Complaint*, *Preliminary Statement*, ¶ A; *Am. Complaint*, ¶ A; Doc. No. 29, pp. 14-15. More specifically, Plaintiff Whiteside contends that, in a letter to an inmate at another facility, he said that he "doesn't eat red meat and now buys chicken and fish when other prisoners sell it in the mop closet, which has been common knowledge for years at Ross Correctional." Doc. No. 29, pp. 14-15. According to Plaintiff

Whiteside, Defendant Baker believed that the phrase "mop closet" "was allegedly where Plaintiff Whiteside was having sex with female staff." *Id*. at 15. Therefore, Plaintiff Whiteside was told that he had to refrain from using the words "mop closet" in his letters. *Id*. He alleges that this instruction violates his right to freedom of expression. *Id.*

The United States Supreme Court has held that inmates retain First Amendment rights, including the right to freedom of expression. *See Bazzetta v. McGinnis*, 430 F.3d 795, 804 (6th Cir. 2005) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). However, "in the First Amendment context . . . some rights are inconsistent with the status of a prisoner[.]" *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). An inmate may retain only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Therefore, a restriction on an inmate's freedom of expression is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to consider when determining if the restriction is reasonably related to a legitimate penological goal are (1) whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest, (2) whether there exist alternative methods to exercise the right, (3) the impact of the assertion of the right on prison operations, and (4) whether alternative means are available at a *de minimis* cost to valid penological interest. *Id*. at 89-91.

In the case *sub judice*, Plaintiff Whiteside complains that his freedom of expression was violated when he was told that he could not

17

use the words "mop closet" in his letters.  This Court disagrees.

Based on Plaintiff Whiteside's allegation, Defendant Baker believed

that the phrase "mop closet" was allegedly where Plaintiff Whiteside

was having sex with female staff.  Prohibiting romantic relationships

between prisoners and corrections officials is reasonably related to a

legitimate penological goal. *See*, *e.g.*, *Keeney v. Heath*, 57 F.3d 579,

581 (7th Cir. 1995) (finding that a prison guard's romantic

relationship with an inmate could make the guard "a potential

facilitator of unlawful communication between [the inmate] and others

and a potential provider of favored treatment for him" and that "[j]ust

the suspicion of favored treatment could create serious problems of

morale"). *See also Lape v. Pennsylvania*, No: 05-1094, 157 Fed. Appx.

491, 499 (3d Cir. 2005) ("Fraternization between guards and prisoners

would not only increase the risk that contraband could be introduced

into the facility, but would also compromise the respect and authority

that must be commanded by correctional officers by giving inmates a

basis to question their impartiality."); *Carrigan v. Davis*, 70 F.

Supp.2d 448, 454 (D.Del. 1999) ("[S]exual conduct between prison guards

and inmates destabilizes the prison environment by compromising the

control and authority of the guard over the inmate, compromising the

inmate's health, security and well-being and creating tensions and

conflicts among the inmates themselves"); *Fisher v. Goord*, 981 F. Supp.

140, 175 (W.D.N.Y. 1997) ("Sexual interactions between corrections

officers and inmates, no matter how voluntary, are totally incompatible

with the order and discipline required in a prison setting.").

Permitting Plaintiff Whiteside to communicate in this manner directly

undermines prison security, safety and morale by implying that such

behavior, *i.e.*, sex with female prison guards, will be tolerated. *Id*. *Cf. Jackson v. Pollard*, No. 07-C-028-S, 2007 U.S. Dist. LEXIS 38841, at *9 (W.D. Wis. May 25, 2007) ("Allowing plaintiff [prisoner] to communicate in code would have an adverse effect on security as well as on the allocation of resources in the prisons.").

Moreover, defendants did not absolutely preclude Plaintiff Whiteside from communicating with other prisoners or from discussing his dietary preferences with these inmates through the use of different word choices. Instead, by his own admission, Plaintiff Whiteside may not use the term "mop closet," but presumably he can communicate the same information (that he is a vegetarian and purchases alternative food items) in a different manner. Accordingly, defendants did not unconstitutionally infringe on Plaintiff Whiteside's limited right to express himself. Therefore, the Magistrate Judge **RECOMMENDS** that, as to Plaintiff Whiteside's claims based on freedom of expression, *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** and that these claims of Plaintiff Whitehouse be **DISMISSED**.

### D. Retaliation

Plaintiff Whiteside alleges that defendants violated his rights under the First Amendment by retaliating against him "for lawful exercise of his rights." *Complaint*, ¶ A; *Am. Complaint*, ¶ A.

A plaintiff alleging retaliation bears the burden of proving three essential elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *see also Watkins v. Phillips*, 194 F.3d 1315 (6th Cir. 1999). In order to prevail on that claim, the plaintiff must establish

that

> (1) the plaintiff engaged in protected conduct; (2) an
> adverse action was taken against the plaintiff that would
> deter a person of ordinary firmness from continuing to
> engage in that conduct; and (3) there is a causal connection
> between elements one and two -- that is, the adverse action
> was motivated at least in part by the plaintiff's protected
> conduct.

*Thaddeus-X*, 175 F.3d at 394. *See also Bloch v. Ribar*, 156 F.3d 673,

678 (6th Cir. 1998). "[T]he plaintiff must be able to prove that the

exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct." *Smith v. Campbell*,

250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch.*

*Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

"[C]onclusory allegations of retaliatory motive 'unsupported by

material facts will not be sufficient to state . . . a claim under §

1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)

(quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

*See also Smith*, 250 F.3d at 1038 (finding that temporal proximity alone

was insufficient to show a retaliatory motive).

Here, Plaintiff Whiteside alleges retaliation, but his factual

allegations do not support his conclusory claim of retaliation. First,

he fails to specifically identify what conduct formed the basis of the

alleged retaliation, so the *Complaint* and *Am. Complaint* fail to allege

that he engaged in protected conduct. Second, even if the Court

speculates that Plaintiff Whiteside bases his claims on pursuing

litigation and/or exhausting his administrative remedies, he fails to

show a causal connection between the protected activity and the alleged

adverse action, ostensibly, his transfer from MaCI to RCI, placement in

segregation and filing false conduct reports against him. *See*

*Complaint*, ¶¶ 30, 34; Doc. No. 26, p. 1; Doc. No. 35, p. 2. Other than perhaps temporal proximity and bare allegations of retaliatory motive, Plaintiff Whiteside offers no factual allegations to support his claim. *See id*. As discussed *supra*, conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim. Accordingly, the Magistrate Judge **RECOMMENDS** that, as to Plaintiff Whiteside's retaliation claims, *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** and that these claims of Plaintiff Whitehouse be **DISMISSED**.

    **E.   Due Process**

Plaintiff Whiteside raises two claims of violations of the Due Process Clause of the Fourteenth Amendment. *See Complaint*, ¶ A; *Am. Complaint*, ¶ A. First, he alleges that "all actions related to disciplinary charges" against him lacked fair notice and violated his rights under the Due Process Clause. *Id*. He further alleges that rules listed under O.A.C. § 5120-9-06(C), specifically Rules (C)(28), (C)(50) and (C)(51), are vague and lack fair notice in violation of the Due Process Clause. *Id*. Defendants move to dismiss these claims because, *inter alia*, they are vague and conclusory and are not actionable. *Motion to Dismiss Original Complaint*, pp. 5-6; *Motion to Dismiss Amended Complaint*; *Motion of Defendants Pence and Anderson*, pp. 6-8, 16-17.

The Due Process Clause of the Fourteenth Amendment provides in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV.

"'Those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 2393 (2005)).  Therefore, a court addresses two questions in a procedural due process analysis.  *Id.*  "'The first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"  *Id.* (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  *See also Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

### 1.  Claims based on disciplinary proceedings

In the prison context, "disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Instead, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  *Id.*  Accordingly, prisoners only enjoy procedural safeguards to the extent necessary to protect substantive rights.  *See Washington v. Harper*, 494 U.S. 210, 220 (1990) ("Procedural protections must be examined in terms of the substantive rights at stake.").  The United States Supreme Court has held that the only liberty interest a prisoner may protect through Section 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff Whiteside complains broadly that "all actions related to

disciplinary charges" against him violated his due process rights. However, the Court construes Plaintiff Whiteside's *Complaint*, *Amended Complaint* and opposition to the motions to dismiss to raise a few specific due process challenges, apparently related to rules infraction board ("RIB") proceedings in July 2008 and other disciplinary proceedings. *See*, *e.g.*, *Complaint*, ¶¶ 25, 26, 32, 58-61. First, Plaintiff Whiteside complains that he was unfairly placed in segregation on different occasions. *See, e.g.*, *Complaint*, ¶¶ 24, 29, 35-36, 54, 64; Doc. No. 29, pp. 5, 7, 12. However, segregation does not qualify as an "atypical and significant hardship." *See*, *e.g.*, *Sandin*, 515 U.S. at 484; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Accordingly, there can be no due process violation premised on time spent in segregation in this case.

Second, to the extent that Plaintiff Whiteside complains that a transfer from MaCI to RCI, "with two-level security increase," violated his due process rights, *see*, *e.g.*, *Complaint*, ¶¶ 34, 36, this argument is without merit. The transfer of an inmate to another institution, not a "Supermax" facility, does not implicate constitutionally protected liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005);[13] *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Here, no liberty interest is implicated because Plaintiff Whiteside was transferred to RCI, which

---

[13]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson*, 545 U.S. at 213. Ohio has only one Supermax facility, the Ohio State Penitentiary (OSP), which was opened in 1998. *Id*. at 214.

is not a "Supermax" facility.  *Id.*

Third, Plaintiff Whiteside contends that he was not permitted to call witnesses during proceedings in July 2008.  *Complaint*, ¶¶ 57-61; Doc. No. 29, pp. 5-6.  By way of background, Plaintiff Whiteside was held in segregation in June 2008.  *Complaint*, ¶¶ 54-56.  He alleges that he received two conduct reports on July 4, 2008.  *Id.* at ¶ 57. One of the reports, written by Defendant Pence, "charged Plaintiff [Whiteside] with stealing the items he was given permission by Sgt. Corey to possess, possession of property of another, and contraband possession."  *Id.*  The second report, written by defendant David Baker, charged Plaintiff Whiteside with "dealing, business operations, and possessing property of another[.]"  *Id.*  Defendant "Sergeant Guy," the assigned hearing officer, refused to permit Plaintiff Whiteside to call witnesses to testify as to Defendant Pence's report and found Plaintiff Whiteside guilty of the offense.  *Id.* at ¶¶ 58-59.

Defendant Guy referred the second conduct report, Defendant Baker's report, to the RIB.  *Id.* at ¶ 58.  On July 10, 2008, Plaintiff Whiteside appeared before the RIB and complained about due process violations, including, *inter alia*, the "denial of witnesses[.]" *Id.* at ¶ 61.  Plaintiff Whiteside was found guilty, a decision that was affirmed on appeal.  *Id.* at ¶¶ 61-63.  As a result of Defendant Baker's conduct report, or as a result of both conduct reports, Plaintiff Whiteside remained in segregation.  *Id.* at ¶¶ 63-64.

In opposing defendants' motions to dismiss, Plaintiff Whiteside contends that the refusal to call his witnesses violated his due process rights, arguing that prisoners have the right to call witnesses.  Doc. No. 29, pp. 5-6.  He acknowledges that a request for

witnesses may be denied on the basis of "irrelevance, lack of necessity, or the hazards presented in individual cases[,]" but contends that none of these concerns were present in this case. *Id*. at 6 (quoting *Wolff*, 418 U.S. at 566).

Plaintiff Whiteside is correct that there exists a restricted right to call witnesses during a prison hearing. *Wolff*, 418 U.S. at 566-67. However, as discussed *supra*, showing that he was deprived of a protected liberty interest without due process is only part of his burden. Plaintiff Whiteside also must establish that he actually possessed a protected liberty interest in the first place, which he cannot do. *See Hahn*, 190 F.3d at 716; *Meachum*, 427 U.S. at 225. *See also Williams v. Wilkinson*, Nos. 01-3082, 01-3243, 51 Fed. Appx. 553, at *556-57 (6th Cir. Nov. 15, 2002). In *Williams*, for example, the plaintiff prisoner alleged due process violations in connection with a RIB proceeding. *Williams*, 51 Fed. Appx. at 554. Specifically, the plaintiff alleged, *inter alia*, that he was not allowed to call witnesses during the hearing. *Id*. at 555. The plaintiff was found guilty and received a suspended fifteen-day sentence in segregation as part of his punishment. *Id*. at 556. The district court concluded that the punishment that the plaintiff ultimately received did not constitute an "atypical hardship" under *Sandin*, but that "the manner in which" the RIB conducted the hearing, found him guilty and imposed a sanction, resulted in an "atypical and significant hardship." *Id*. at 557. On appeal, the Sixth Circuit agreed that the sanctions did not amount to an atypical hardship, but disagreed that "the deprivation of basic procedural due process as it extends from the Due Process Clause itself" created a cause of action. *Id*. (internal quotation marks

omitted). Instead, "[t]he manner in which (or the process by which) the plaintiff lost his interest is considered *only to the extent that the interest is constitutionally protected*." *Id.* (emphasis added). Because the plaintiff did not suffer a deprivation of a recognized liberty interest, the Sixth Circuit concluded that the plaintiff's claim failed. *Id.*

The same is true in this case. As discussed *supra*, Plaintiff Whiteside remained in segregation following the proceedings at issue. Because segregation does not amount to an "atypical and significant hardship," Plaintiff Whiteside cannot establish that he possessed a protected liberty interest. Therefore, Plaintiff Whiteside's claim that he was denied the opportunity to call witnesses during the disciplinary proceedings, which ultimately resulted in a finding of guilty, fails to establish a violation of due process rights. *Williams*, 51 Fed. Appx. at 557.

Finally, Plaintiff Whiteside's allegations that his due process rights were violated because defendants failed "to provide a valid, meaningful explanation of the finding of guilt" and because his convictions were "unsupported by any evidence[,]" Doc. No. 29, pp. 6-7, suffer from the same defect because he cannot show that placement in segregation constitutes an "atypical and significant hardship." Moreover, contrary to his allegations that his convictions were "unsupported by any evidence[,]" Plaintiff Whiteside admits that defendants relied on some evidence in reaching their decision. Doc. No. 29, pp. 6-7. Specifically, he complains that defendants believed "written reports and testimony of those against Plaintiff [Whiteside] over the personal testimony of Plaintiff" and on information ("the mere

26

denial") from a prison guard. *Id.* "[T]he requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board[.]" *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added). *See also Young v. Tennessee Dep't of Corr.*, 863 F.2d 50 (6th Cir. 1988) (affirming *sua sponte* dismissal of plaintiff prisoner's due process claim where "some evidence" existed to support the disciplinary board's decision). Accordingly, even though Plaintiff Whiteside does not agree with the evidence or with the board's conclusions, there was some evidence to support the board's decision. Because the decisions are supported by "some evidence," Plaintiff Whiteside's substantive due process rights were not violated.[14]

In light of the above, the Magistrate Judge **RECOMMENDS** that, as to Plaintiff Whiteside's due process claim based on disciplinary proceedings, *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** and that these claims of Plaintiff Whitehouse be **DISMISSED**.

## 2. Claims based on O.A.C. § 5120-9-06(C)(28), (50), (51)

Plaintiff Whiteside alleges that Rules (C)(28), (50) and (51) under O.A.C. § 5120-9-06 are vague and lack fair notice. *Complaint*, ¶¶ A, 24, 26, 32; Doc. No. 29, pp. 10-14. He seeks declaratory and injunctive relief and asks for monetary relief resulting from "mental

---

[14]To the extent that Plaintiff Whiteside's due process claim may rely on allegations that certain conduct reports against him were falsified, *see*, *e.g.*, Doc. No. 29, p. 9, this reliance is misplaced. *See*, *e.g.*, *Jackson v. Hamlin*, 61 F. Appx. 131, 132 (6th Cir. 2003) (A "prisoner has no constitutional right to be free from false accusations of misconduct.") (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986)).

stress and emotional injury." *Complaint*, ¶ A; *Am. Complaint*, ¶ A.

As an initial matter, the Court notes that these claims are directed to only MaCI and ODRC defendants.[15]  For example, Plaintiff Whiteside alleges that he was placed in segregation on August 21, 2006, by defendant Ray Campbell, a correctional counselor at MaCI, for violating Rule 28.  *Complaint*, ¶¶ 15, 24.  Plaintiff Whiteside further alleges that Defendant Haskins, the administrative assistant to the MaCI warden, charged him with violating Rules (C)(50) and (52). *Complaint*, ¶¶ 5, 9; Doc. 29, pp. 11-14.  Plaintiff Whiteside also appears to argue that defendant Collins, ODRC director, defendant Trevor Clark, ODRC staff counsel, and other MaCI defendants were also responsible for these due process violations.  *Complaint*, ¶¶ 3-6, 9, 15, 24; Doc. 29, pp. 10-14; Doc. No. 35.  However, the RCI and LoCI defendants cannot be implicated because Plaintiff Whiteside was charged at MaCI for violations of Rules (C)(28), (50) and (51).  Accordingly, Plaintiff Whiteside fails to state a claim against the RCI and LoCI defendants.[16]

Defendants argue that any request for injunctive relief based on these claims against MaCI defendants should be denied as moot because Plaintiff Whiteside is no longer incarcerated at MaCI.  *Motion to Dismiss Original Complaint*, pp. 4-5; *Motion of Defendants Pence and*

---

[15]The "ODRC defendants" in this section refer to defendants Collins and Clark.  *Complaint*, ¶¶ 3-4.  The "MaCI defendants" refer to defendants employed by MaCI, including defendants Lazaroff, Burks-White, Haskins, Workman, Lambert, Willingham, Terrill, Stanley, Gossard, Perry, Campbell.  *Id.* at ¶¶ 5-6, 9-11, 13-15.  The "LoCI defendants" refer to the defendants employed by London Correctional Institution ("LoCI").  *Am. Complaint*, ¶ 66.  The "RCI defendants" refer to the remaining defendants who are employed by RCI. *Complaint*, ¶¶ 6-8, 10-13, 16-18.

[16]Moreover, Plaintiff Whiteside does not allege that he was incarcerated at LoCI during the period at issue in this action.

*Anderson*, p. 6. Plaintiff Whiteside admits that he was transferred from MaCI to RCI on February 1, 2007. *Complaint*, ¶¶ 2, 20 and 36. Accordingly, the Court concludes that Plaintiff Whiteside's request for injunctive and declaratory relief against the MaCI defendants is now moot because he is no longer incarcerated at MaCI. *See*, *e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Defendants also argue that Plaintiff Whiteside does not allege that he suffered a physical injury, which bars him from recovering anything other than nominal damages under the PLRA. *Defendants' Motion to Dismiss Original Complaint*, p. 4; *Motion of Defendants Pence and Anderson*, p. 5. Plaintiff Whiteside asks the Court to award "compensatory damages of $10,000 jointly and severally . . . against all defendants for the mental stress and emotional injury caused by defendants' conduct, and AWARD punitive damages in excess of $10,000 against all defendants WITH ACTUAL AMOUNT to be determined by a jury[.]" *Am. Comp.*, p. 2, ¶ E. *See also Complaint*, ¶ C.

The PLRA provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Accordingly, a prisoner cannot recover for emotional distress absent a predicate physical injury. *Id. See also Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005); *Wells v. Jefferson County Sheriff Dep't*, 159 F. Supp.2d 1002, 1010-11 (S.D. Ohio 2001). This prior physical injury must be more than *de minimis. See*, *e.g.*, *Jarriett*, 414 F.3d at 640; *Corsetti v. Tessmer*, No. 01-1595, 41 Fed. Appx. 753, 755 (6th Cir. June

29

25, 2002) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

In the case *sub judice*, Plaintiff Whiteside's claim for compensatory damages based on his emotional or mental injuries stemming from alleged due process violations are barred because the *Complaint* and *Amended Complaint* are devoid of any allegation of physical injury. 42 U.S.C. § 1997e(e). Defendants concede that Plaintiff Whiteside may be entitled to nominal damages, but do not specifically address whether or not his request for punitive damages is barred. Because it is not immediately clear to the Court whether Plaintiff Whiteside bases his claim for punitive damages on mental and emotional distress and defendants have not addressed this issue, the Court concludes that defendants have not established that Plaintiff Whiteside's request for punitive damages is barred.

Defendants further contend that Plaintiff Whiteside's due process claims based on O.A.C. § 5120-9-06 fail because he previously filed a lawsuit in the Ohio Court of Claims based on the same acts or omissions and because his arguments are vague and conclusory. *Motion to Dismiss Original Complaint*, pp. 5-6, 10; *Motion of Defendants Pence and Anderson*, pp. 6-8, 15. In response, Plaintiff Whiteside contends, *inter alia*, that defendants' argument "is waived" because they fail to identify the specific case caption and number of this action filed in the Court of Claims. Doc. No. 29, p. 3.

Based on the present record, the Court is unable to determine whether or not Plaintiff Whiteside's due process claims based on O.A.C. § 5120-9-06 are barred by prior state litigation. Defendants fail to identify that prior action and the Court cannot verify that Plaintiff

Whiteside indeed raised the same claims as these in the instant action.[17]  Accordingly, the Magistrate Judge **RECOMMENDS** that, as to Plaintiff Whiteside's due process claim based on O.A.C. § 5120-9-06 (C)(28), (50) and (51), *Defendants' Motion to Dismiss Original Complaint*, *Defendants' Motion to Dismiss Amended Complaint* and *Motion of Defendants Pence and Anderson* be **GRANTED** as to the RCI and LoCI defendants and as to any request for injunctive relief and request for compensatory damages against the MaCI defendants, but **DENIED** as to the remaining claims against the ODRC and MaCI defendants.

## IV.    MOTIONS FOR TEMPORARY RESTRAINING ORDERS, DOC. NOS. 21 AND 37

    Plaintiffs have filed two motions for temporary restraining order and/or for preliminary injunction.  Doc. Nos. 21 and 37.  Fed. R. Civ. P. 65(a) and (b) permits a party to seek injunctive relief when a plaintiff believes that he will suffer irreparable harm or injury.  A temporary restraining order relates only to restraints sought without written or oral notice to the adverse party or his attorney, whereas the application is properly treated as one for a preliminary injunction where the adverse party has been given notice.  *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (citing *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978)); Fed. R. Civ. P. 65(a), (b).  In this action, defendants were notified of

---

[17]However, the Court notes that in a separate action filed in this Court, Plaintiff Whiteside requested interim injunctive relief in connection with Rule 28.  *Whiteside v. Parrish*, No. 2:05-cv-280, 2007 U.S. Dist. LEXIS 54165, at *3-5 (S.D. Ohio July 26, 2007).  Plaintiff Whiteside, arguing that Rule 28 was unconstitutionally vague, sought vacation of the RIB proceeding and release from segregation resulting from a violation of this rule.  *Id.* at *3-4.  The Court denied the requested preliminary injunctive relief as it related to his RIB conviction under Rule 28 because there was no longer an injury from which the Court could grant relief.  *Id.* at *5.

plaintiffs' intent to seek injunctive relief and responded to the request. Thus, the Court will address the motions as seeking preliminary injunctions.

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). A preliminary injunction is an extraordinary remedy that requires the movant to establish the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc), quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). Courts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978). In fact, the United States Court of Appeals for the Sixth Circuit has held that, where it appears that the claimant has no chance of success on the merits of the claim, the Court may dismiss the motion for interim injunctive relief without considering the other three factors. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

The Court will address each motion in turn.

**A. First Motion for Temporary Restraining Order, Doc. No. 21**

In the first motion for temporary restraining order, Plaintiffs

Gover and Greathouse seek "assistance for their post-conviction concerns, including, but not limited to, potential federal habeas corpus issues." Doc. No. 21, p. 2. However, as discussed *supra*, Plaintiffs Gover and Greathouse have failed to exhaust their administrative remedies, requiring dismissal of their claims. Because the Magistrate Judge recommends dismissal of their underlying claims, their request for extraordinary injunctive relief must also fail. *See*, *e.g.*, *Michigan State AFL-CIO*, 103 F.3d at 1249.

Plaintiff Whiteside seeks relief related to his claim based on access to the courts. *Id*. at 1-2. Specifically, he alleges that he needs access to his legal materials and complains that defendants have not photocopied "certain legal materials" "because he does not have adequate funds in his account," effectively denying him access to the courts. *Id*. at 2. As discussed *supra*, however, because the Magistrate Judge recommends dismissal of his claims based on access to the courts, Plaintiff Whiteside's request for a preliminary injunction is likewise without merit. *Michigan State AFL-CIO*, 103 F.3d at 1249.

Accordingly, the Magistrate Judge **RECOMMENDS** that the motion for temporary restraining order and/or preliminary injunction on behalf of Plaintiffs Greathouse, Gover and Whiteside, Doc. No. 21, be **DENIED**.

B.    **Second Motion for Temporary Restraining Order, Doc. No. 37**

Plaintiff Whiteside has filed a second motion for temporary restraining order and/or preliminary injunction, Doc. No. 37. He seeks, *inter alia*, an order prohibiting defendants from transferring him to another prison because of alleged death threats against him. *Id*. However, as discussed *supra*, the transfer of an inmate to another

institution, which is not a "Supermax" facility, does not implicate constitutionally protected liberty interests. *Wilkinson v. Austin*, 545 U.S. at 222; *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Because the Magistrate Judge recommends dismissal of Plaintiff Whiteside's claims based on a transfer, his request for a preliminary injunction based on this claim is likewise without merit.[18]

Plaintiff also seeks a preliminary injunction (1) requiring defendants to permit him to discuss legal matters with other inmates and to send examples of how to file legal matters; (2) requiring defendants to permit him access to his legal materials; and (3) forbidding defendants from threatening, harassing, or punishing him because of his role as a "jailhouse lawyer" or because of his "access to the courts." Doc. No. 37, pp. 1-2. However, these requests appear to be based on claims the dismissal of which the Magistrate Judge has already recommended, namely claims based on freedom of expression, access to the courts and retaliation. Therefore, the request for a preliminary injunction based on these claims is without merit. Accordingly, the Magistrate Judge **RECOMMENDS** that Plaintiff Whiteside's motion for temporary restraining order and/or preliminary injunction, Doc. No. 37, be **DENIED**.

_____

[18]Moreover, the Court notes that Plaintiff Whiteside fails to specify from what facility the alleged death threats are coming. Based on Plaintiff Whiteside's allegations, the threats presumably came from somewhere in RCI. Doc. No. 37, p. 4 (alleging that defendant Guy of RCI stated that they "could place Plaintiff Whiteside in Protective Custody until he could be *transferred* to another prison") (emphasis in original). Although he argues that he has a greater risk of danger "at a prison where he is unknown," Doc. No. 37, p. 4, common sense suggests that Plaintiff Whiteside is at greater risk from someone in the facility who purportedly generated the threats, *i.e.*, at RCI.

**V.      REMAINING MOTIONS, DOC. NOS. 28, 44, 46 AND 52**

The parties have filed various motions asking the Court to delay
or to expedite ruling on the motions for temporary restraining order.
Doc. Nos. 28, 44, 46 and 52.  In light of the discussion *supra*, these
motions are **DENIED as moot.**

**WHEREUPON**, in summary, the Magistrate Judge **ORDERS** that:

1.      Plaintiff Whiteside's motion to amend the memorandum in
        opposition to defendants' motion to dismiss, Doc. No. 35, is
        **GRANTED**;

2.      Plaintiff Huston must specify in writing his intentions to
        pursue his claims within twenty (20) days from the date of
        this *Order and Report and Recommendation*;

3.      Defendants' request to sever the claims and parties in this
        case, Doc. No. 49, is **DENIED without prejudice**;[19]

4.      Defendants' request for a screening order of the *Amended
        Complaint*, Doc. Nos. 17 and 49, is **DENIED**;

5.      Defendants' requests to delay ruling on the motions for
        temporary restraining orders, Doc. Nos. 28 and 44, and
        Plaintiff's requests to expedite ruling on the motions for
        temporary restraining orders, Doc. Nos. 46 and 52, are
        **DENIED as moot.**

The Magistrate Judge further **RECOMMENDS** that

1.      Plaintiff Whiteside's motion for order to show cause, Doc.

_____

[19]As discussed *supra*, Doc. No. 17 combines defendants' request for a
screening order and to dismiss plaintiffs' claims.  Similarly, Doc. No. 49,
also contains the motions of defendants Pence and Anderson to for a screening
order and to dismiss plaintiffs' claims.

No. 50, be **DENIED**;

2.     as to the claims of Plaintiffs Greathouse and Gover, defendants' motions to dismiss, Doc. Nos. 14, 17 and 49, be **GRANTED** and that the claims of Plaintiffs Greathouse and Gover be **DISMISSED without prejudice**;

3.     as to Plaintiff Whiteside's equal protection / discrimination / disparate treatment claims, due process claims based on disciplinary proceedings, claims based on access to the courts, claims based on freedom of expression and retaliation claims, defendants' motions to dismiss, Doc. Nos. 14, 17 and 49, be **GRANTED** and that these claims of Plaintiff Whitehouse be **DISMISSED**;

4.     as to Plaintiff Whiteside's due process claims based on O.A.C. § 5120-9-06(C)(28), (50) and (51),defendants' motions to dismiss, Doc. Nos. 14, 17 and 49, be **GRANTED** as to the RCI and LoCI defendants and as to any request for injunctive relief and request for compensatory damages against the MaCI defendants, but **DENIED** as to the remaining claims against the ODRC and MaCI defendants;

5.     Plaintiffs' motions for temporary restraining order and/or preliminary injunction, Doc. Nos. 21 and 37, be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within ten (10) days, file and serve on all parties objections to the Report and Recommendation, and the part thereof in question, as well as the basis for the objection thereto. 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Responses to objections must be filed within ten (10) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to de novo review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994); *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers*, AFL-CIO, 829 F.2d 1370 (6th Cir. 1987).


November 23, 2009                    <u>   s/Norah McCann King   </u>
                                          Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge