IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


NORMAN V. WHITESIDE,

        Plaintiff,

    vs.                             Civil Action 2:08-CV-875
                                        Judge Graham
                                        Magistrate Judge King

TERRILL COLLINS, *et al.*,

        Defendants.


**OPINION AND ORDER**

The only claims remaining in this action are those of plaintiff Norman V. Whiteside, a state inmate proceeding without the assistance of counsel, against defendants associated with the Madison Correctional Institution ("MaCI") and the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging that Ohio Administrative Code ("O.A.C.") § 5120-9-06, Rules (C)(28), (50) and (51), are vague and lack fair notice. *Opinion and Order*, Doc. No. 66. This matter is before the Court on *Defendants' (Lambert, Willingham, Terrill, Perry, Stanley, Gossard, Collins, Clark, Lazaroff, Haskins, Workman) Motion for Summary Judgment*, Doc. No. 157 ("*Defendants' Motion for Summary Judgment*"), *Plaintiff's Summary Judgment Motion*, Doc. No. 182 ("*Plaintiff's Motion for Summary Judgment*"), *Plaintiff's Motion to Strike Defendants' Reply (Doc #184)*, Doc. No. 188 ("*Plaintiff's Motion to Strike*"), and *Plaintiff's Motion for Extension*, Doc. No. 194.

I. **ALLEGED DEFICIENCIES IN** *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

In opposing *Defendants' Motion for Summary Judgment*, plaintiff first argues that defendants' motion is "Not Consistent With Court's Instructions/Order[,]" that the declarations attached thereto are not "valid" and that defendants' motion should therefore be denied. *Plaintiff's Memorandum Opposing Defendants' Summary Judgment Motion*, Doc. No. 183 ("*Plaintiff's Memo. in Opp.*"), pp. 1-2.

By way of background, on March 12, 2012, the United States Magistrate Judge detailed the lengthy procedural history of this case, including defendants' multiple mistakes and their failure to track certain case deadlines. *Order and Report and Recommendation*, Doc. No. 148, p. 9. Stating that "the Court will not tolerate defendants' continued inattention to the litigation[,]" the Magistrate Judge ordered certain defendants to respond to plaintiff's discovery requests "to enable him [plaintiff] to respond to a motion for summary judgment." *Id.* at 9. Anticipating those forthcoming discovery responses, the Magistrate Judge recommended that defendants' first motion for summary judgment be denied without prejudice to renewal:

> Because this Court has provided additional time for limited discovery, it is **RECOMMENDED** that the *Motion for Summary Judgment* be **DENIED without prejudice to refiling within 30 days of the date of this** *Order and Report and Recommendation*. Defendants are **REMINDED** that any renewed motion for summary judgment must clearly articulate legal arguments and provide detailed evidentiary support rather than conclusory arguments based on boilerplate language.

*Id.* at p. 10 (emphasis in original). After detailing the requirements under Fed. R. Civ. P. 56(d), the Magistrate Judge also noted plaintiff's failures to comply with that rule. *Id.* at 10-11. The

2

Magistrate Judge went on to warn plaintiff that the Court would not overlook such failures in the future:

> Notwithstanding this Court's prior lenience related to this *pro se* plaintiff's failure to comply with Rule 56(d), *see*, *e.g.*, *Opinion and Order*, Doc. No. 106, plaintiff is specifically **ADVISED** that he must comply with that rule, if applicable, in all future filings.  Stated differently, the Court will no longer overlook any failure on plaintiff's part to comply with the requirements of Rule 56(d) should plaintiff request any future extension of time to respond to a renewed motion for summary judgment based on a need for additional discovery.

*Id*. at 11 (emphasis in original).  This *Order and Report and Recommendation* was later adopted and affirmed without objection. *Order*, Doc. No. 156.

Defendants thereafter filed *Defendants' Motion for Summary Judgment*.  The initial supporting memorandum is identical to defendants' earlier summary judgment motion, which the Court denied without prejudice to renewal.  *Defendants' Motion for Summary Judgment*, p. 1 n.1.  Plaintiff then moved under Rule 56(d) for additional time to conduct discovery in which to respond to defendants' renewed motion.  Doc. No. 160.  On June 22, 2012, the Court denied that motion.  *Opinion and Order*, Doc. No. 173. Although plaintiff failed, once again, to comply with Rule 56(d), (because his supporting declaration was not dated[1]), the Court went on to analyze and explain why plaintiff's motion nevertheless failed on the merits. *Id*.

Now, plaintiff takes the position that the *Order and Report and*

---

[1]The Court commented that, "in light of the Court's specific warning and considering plaintiff's extensive litigation experience, it is difficult to conclude that plaintiff's failure to comply with the express requirements of Rule 56(d) was inadvertent."  *Id*. at 4 n.4.

*Recommendation*, Doc. No. 148, "suggests" that defendants' first motion for summary judgment was deficient and that, by re-filing that motion, defendants "simply ignored what Your Honor requested." *Plaintiff's Memo. in Opp.*, p. 1.  Plaintiff specifically argues that the more recently filed *Defendants' Motion for Summary Judgment* "contains no valid supporting affidavits." *Id*.  Because the declarations attached to defendants' current motion for summary judgment bear a date of 2011, *i.e.*, well before the Court's *Order and Report and Recommendation*, Doc. No. 148, plaintiff argues that the "declarations are neither original, nor valid, [and] they cannot lawfully be used to support" defendants' current motion. *Plaintiff's Memo. in Opp.*, p. 2.

> It is unthinkable that the same court [that warned it would not overlook plaintiff's failure to comply with Rule 56(d)] will now allow defendants to violate Rule 56 by not attaching valid, original affidavits/declarations to their current motion, especially when the <u>copies</u> of the affidavits/declarations attached come from a motion that has already been denied by the Court. . . .[Providing defendants additional time to correct this alleged deficiency] would go against the court's orders wherein the court stated it would no longer overlook procedural violations from any party.

*Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment* ("*Plaintiff's First Declaration*"), ¶ 2 (emphasis in original), attached to *Plaintiff's Memo. in Opp*.  *See also Plaintiff's Memo. in Opp.*, p. 2 (arguing that filing the same motion for summary judgment "is no different than Plaintiff failing to put the date executed on his declaration" that was filed in support of a prior Rule 56(d) motion, which was denied by the Court).

Plaintiff's arguments are not well taken.  The Court denied defendants' first motion for summary judgment without prejudice to renewal only because the Court permitted plaintiff to conduct

4

additional discovery and not because of a substantive deficiency or failure to comply with Rule 56. Stated differently, the Court did not review and reject defendants' first motion for summary judgment on the merits, but rather denied the motion without prejudice to re-filing in order to provide plaintiff additional time and information to respond to the substance of the motion. *See Order and Report and Recommendation*, Doc. No. 148, pp. 9-10. Although the Court reminded defendants that a renewed motion "must clearly articulate legal arguments and provide detailed evidentiary support rather than conclusory arguments based on boilerplate language[,]" *id.* at 10, the Court did not prohibit defendants from later filing a motion that presented the same substantive arguments. *Id.* at 10-12; *Order*, Doc. No. 156.

Plaintiff also argues that the declarations attached to *Defendants' Motion for Summary Judgment* "cannot lawfully be used to support" defendants' motion. *Plaintiff's Memo. in Opp.*, p. 2. In so contending, plaintiff asserts that the declarations are not "valid" because the same declarations were filed in connection with the first motion for summary judgment. *Id.*; *Plaintiff's First Declaration*, ¶ 2. However, as discussed *supra*, the Court did not review and reject the substance of the first motion for summary judgment or of the supporting declarations, nor did the Court otherwise forbid defendants from refiling the same motion and evidence. Indeed, the Court finds nothing "invalid" or "unlawful" about defendants' supporting declarations simply because they were dated prior to this Court's *Order and Report and Recommendation*, Doc. No. 148.

Finally, plaintiff takes the position that defendants' renewed

5

motion for summary judgment is on a par with plaintiff's past failure to comply with Rule 56(d). This Court again disagrees. The Court expressly found that plaintiff's Rule 56(d) motion did not comply with the requirements of that rule and explicitly warned plaintiff that it would "no longer overlook any failure on plaintiff's part to comply with the requirements of Rule 56(d)." *Order and Report and Recommendation*, pp. 10-11. In other words, although the Court did not prohibit defendants from filing a motion for summary judgment that raised the same substantive arguments, the Court expressly advised plaintiff that his prior motions did not comply with Rule 56(d) requirements and warned plaintiff that future motions must comply with the requirements of the rule. Plaintiff's attempt to recast the *Order and Report and Recommendation*, and therefore bar consideration of the evidence attached to *Defendants' Motion for Summary Judgment*, is unpersuasive. Accordingly, this Court must reject plaintiff's request to deny *Defendants' Motion for Summary Judgment* merely because it presents the same substantive arguments as did defendants' first motion for summary judgment, Doc. No. 117.

## II. *PLAINTIFF'S MOTION TO STRIKE*

Plaintiff also asks the Court to strike *Defendants' (Lambert, Willingham, Terrill, Perry, Stanley, Gossard, Collins, Clark, Lazaroff, Haskins, Workman) Reply to Plaintiffs' Memorandum Opposing Defendants' Summary Judgment*, Doc. No. 184 ("*Defendants' Reply*"). *Plaintiff's Motion to Strike*. The Court previously ordered that defendants' opposition to this motion, if any, be filed no later than September 5, 2012, and that plaintiff's reply, if any, be filed no

6

later than September 12, 2012.  *Order*, Doc. No. 190.  Although defendants' opposition was timely filed, Doc. No. 192, plaintiff did not file a reply memorandum by September 12, 2012.  However, plaintiff's subsequent motion for an extension of time, seeking leave to file his reply *instanter*, Doc. No. 194, is **GRANTED**.  This matter is now fully briefed and ripe for resolution.

Plaintiff asks this Court to strike *Defendants' Reply* because defendants raised for the first time in that memorandum the argument that plaintiff "'must demonstrate that a liberty interest was violated in order to demonstrate there was a constitutional violation.'" *Plaintiff's Motion to Strike*, p. 1 (quoting *Defendants' Reply*, p. 1). In opposing the motion to strike, defendants note that this argument, and their reference to *Sandin v. Conner*, 515 U.S. 472, 486 (1995), merely responds to plaintiff's assertion, made in *Plaintiff's Memo. in Opp.,* that defendants violated plaintiff's "'clearly established constitutional rights.'" Doc. No. 192, pp. 1-2 (quoting *Plaintiff's Memo. in Opp.*, p. 1).  Plaintiff replies that, by raising for the first time in their reply an argument based on *Sandin,* defendants have effectively waived the argument. Doc. 193, p.   Plaintiff therefore asks that this Court strike *Defendants' Reply* in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 12(f).  *Id*. at 2.

This Court agrees that defendants' reply properly addresses an argument presented by plaintiff in his memorandum in opposition to the motion for summary judgment.  Moreover, although defendants' opening memorandum does not specifically refer to *Sandin*, the memorandum does

7

claim the protection of qualified immunity and argues that defendants have not violated a clearly established right. *Defendants' Motion for Summary Judgment*, p. 8.

In any event, plaintiff has, through his *Motion to Strike*, taken the opportunity to address the challenged argument, *id*. at 1-2; Doc. No. 193, and even addresses, once again, matters raised from the outset of the motion for summary judgment. Plaintiff even attaches new evidentiary materials to his *Motion to Strike*. Under all these circumstances, *Plaintiff's Motion to Strike* is **DENIED**. The Court will, however, consider plaintiff's substantive arguments and evidence raised in his *Motion to Strike* and supporting reply memorandum, Doc. No. 193, in its resolution of *Defendants' Motion for Summary Judgment*.

## III. FACTUAL BACKGROUND

### A.    Procedures Governing Inmate Rules of Conduct, Conduct Reports and Disciplinary Proceedings

In his remaining claims, plaintiff alleges that defendants violated his due process rights when they charged him, while he was incarcerated at MaCI, with violation of O.A.C. § 5120-9-06, Rules (C)(28), (C)(50) and (C)(51), because these rules lack "fair notice."[2] Section 5120-9-06 of the Ohio Administrative Code sets forth inmate rules of conduct that impact the security, safety or operation of ODRC institutions:

> The disciplinary violations defined by this rule shall
> address acts that constitute an immediate and direct threat

---

[2]Plaintiff does not expressly allege in the *Verified Complaint* that O.A.C. § 5120-9-06(C)(51) lacks fair notice, *see Verified Complaint*, ¶¶ A, 24, 26 and 32; it is only in later filings that plaintiff does so. *See* Doc. No. 29, pp. 11-12. The Court liberally construed the *Verified Complaint* to include a claim in connection with Rule (C)(51). *Order and Report and Recommendation*, Doc. No. 54, p. 8 n.9.

to the security or orderly operation of the institution, or to the safety of its staff, visitors and inmates (including the inmate who has violated the rule,) as well as other violations of institutional or departmental rules and regulations.

O.A.C. § 5120-9-06(A) (2006).[3]  In particular, Section 5120-9-06 provides in pertinent part:

(C) Rule violations. . .

\*                  \*                  \*                  \*

(28) Forging, possessing, or presenting forged or counterfeit documents.

\*                  \*                  \*                  \*

(50) Possession of property of another.

(51) Possession of contraband, including any article knowingly possessed which has been altered or for which permission has not been given.

O.A.C. § 5120-9-06(C) (2006) (collectively, "Rules of Conduct," and individually, "Rule 28," "Rule 50" and "Rule 51," respectively).

Section 5120-9-06 also specifies when an inmate may be found guilty of violating a rule of conduct:

No inmate shall be found guilty of a rule of conduct without some evidence of the commission of an act and the intent to commit the act.

(1) The act must be beyond mere preparation and be sufficiently performed to constitute a substantial risk of its being performed.

(2) "Intent" may be express, or inferred from the facts and circumstances of the case.

O.A.C. § 5120-9-06(C)(2006).

---

[3]The Court will refer to the version of the O.A.C. that was in effect in 2006, *i.e.*, the year that plaintiff was charged with violating the rules at MaCI.  *See Exhibit B-1*, attached to *Declaration of Melody Haskins* ("*Haskins Declaration*"), attached as *Exhibit B to Defendants' Motion for Summary Judgment.*

ODRC employees may issue conduct reports for rule violations:

(B) Report: Any department employee who has reason to believe that an inmate has violated an inmate rule (or rules) of conduct may set forth such allegation on the form designated for that purpose.

> (1) The conduct report shall contain a description of the specific behavior constituting each rule violation, cite the name and number of each applicable rule of conduct, and be signed by the staff member making the conduct report.

> (2) The staff member issuing the conduct report shall indicate whether he or she wishes to appear before the RIB when the conduct report is heard.

O.A.C. § 5120-9-07(B)(2006).

Hearing officers, who are staff members designated by the warden and who have completed rules infraction board ("RIB") training, review conduct reports for form and content. O.A.C. § 5120-9-07(C), (D) (2006). Hearing officers' duties in this regard specifically include

> determin[ing] whether the conduct report cites the correct rule, identifies the charged inmate and cites sufficient facts to support the charged violation. The hearing officer is authorized to accept, modify, withdraw or return a conduct report to the staff member for correction or revision.

O.A.C. § 5120-9-07(D)(1)(2006). The hearing officer also meets with the inmate named on the conduct report, provides the inmate a copy of the report and "inform[s] the inmate of the rule violation alleged, the behavior constituting the violation, and the right of the inmate to make a statement regarding the violation." O.A.C. § 5120-9-07(E) (2006).

The hearing officer "may decide and dispose of violations where the alleged conduct is amenable to the dispositions under this paragraph." O.A.C. § 5120-9-07(F). More specifically,

> (1) [t]he hearing officer shall ask the inmate to admit or deny the violation and ask for the inmate's statement

10

regarding the violation.

(2) The hearing officer may interview staff or other inmates regarding the violation.

(3) If the staff member issuing the conduct report has indicated that he or she wishes to appear at the hearing of the conduct report, the hearing officer shall contact the staff member before making any determination in the case.

(4) If the inmate waives participation in the hearing or refuses to participate in the hearing, the hearing officer shall make a written record documenting the waiver or refusal.  The hearing officer may then either proceed under this paragraph or refer the matter to the RIB.

(5) The hearing officer shall determine whether a violation has occurred, [i]f the hearing officer finds that there are some facts to support the conclusion that the inmate violated a rule, the hearing officer may impose any of the following dispositions:

    (a) The hearing officer may refer the inmate for treatment, counseling, or other programming.

    (b) The hearing officer may recommend a change in housing or job assignment.

    (c) The hearing officer may issue a warning or reprimand.

    (d) The hearing officer may recommend to the warden that the inmate be required to make restitution.

    (e) The hearing officer may recommend to the warden that contraband be disposed of in a manner consistent with rule 5120-9-55 of the Administrative Code.

    (f) The hearing officer may restrict privileges or assign up to four hours of extra work duty for each rule violation.

O.A.C. § 5120-9-07(F)(1)-(5) (2006).

When a hearing officer disposes of a rule violation, the hearing officer records the hearing officer's findings and any sanctions imposed and signs the disposition form.  O.A.C. § 5120-9-07(G) (2006). A hearing officer's disposition "shall be submitted to the RIB chair for an administrative review to determine substantial compliance with

11

applicable policies, procedures, and to determine that the disposition was proportionate to the conduct charged" O.A.C. § 5120-9-07(G)(3) (2006). After reviewing the disposition, the RIB chair "may approve the disposition, modify it, or return it to the hearing officer with instructions to refer the matter to the RIB for formal disposition." O.A.C. § 5120-9-07(G)(4) (2006).

The hearing officer may also refer a conduct report to the RIB for formal disposition. O.A.C. § 5120-9-07(H) (2006). In doing so, the hearing officer must, *inter alia*, advise the inmate of his or her procedural rights and of the possible consequences. *Id*. The hearing officer must also decide whether or not to recommend staff assistance for the inmate. *Id*.

Three staff members, who are designated by the warden and who have completed RIB training, comprise the RIB panel. O.A.C. § 5120-9-08(B) (2006). "No staff member shall be permitted to sit as an RIB panel member who wrote the report, witnessed the alleged rule violation, or participated in the investigation of the alleged rule violation." *Id*. Similarly, if a personal interest exists, a staff member "assigned to an RIB shall disqualify himself or herself from the panel[.]" *Id*.

The RIB panel holds a hearing "as soon as practicable" after the hearing officer has interviewed the inmate. O.A.C. § 5120-9-08(C) (2006). The RIB proceedings, except for deliberations relating to guilt or the imposition of penalties, are recorded. O.A.C. § 5120-9-08(D) (2006). During the hearing, certain procedures are followed and the testimony of each witness, whose credibility is assessed by the RIB panel, is presented. O.A.C. § 5120-9-08(E), (F), (H).

12

After it hears testimony, if any, and receives evidence, the RIB panel votes and determines a disposition:

> . . . [T]he RIB panel shall vote and determine whether, based on the evidence presented, they believe that a rule violation occurred, the inmate committed that violation, and if so, what disposition to impose. The RIB panel may consider all information presented in reaching its determination. At least two panel members must concur in a finding of guilt in order to find an inmate guilty of a rule violation and to impose a disposition.
>
>> (1) No inmate shall be found to have violated a rule based solely on his or her past conduct.
>>
>> (2) Past conduct may be considered when determining issues such as credibility and intent; or in considering suitable penalties.

O.A.C. § 5120-9-08(J) (2006). If the RIB panel finds that an inmate is guilty of violating a rule, the panel may, subject to the warden's approval, impose certain penalties:

> (1) Placement of the inmate in disciplinary control . . . .
>
> (2) Recommend that the inmate be referred to the local control committee for possible placement in local control.
>
> (3) Recommend that the inmate receive a security review and/or transfer to another institution.
>
> (4) Order the disposition of contraband in accordance with rule 5120-9-55 of the Administrative Code.
>
> *             *             *             *
>
> (6) Order that the inmate be denied a deduction from his or her minimum or definite sentence (if the inmate is eligible for such deduction,) for a definite number of months after the violation occurred in accordance with rule 5120-9-56 of the Administrative Code.
>
> (7) Order restrictions on personal privileges following an inmate's abuse of such privileges or facilities or when such action is deemed necessary by the warden for the safety and security of the institution, or the well-being of the inmate. Such restrictions shall continue only as long as it is reasonably necessary.

O.A.C. § 5120-9-08(K)(1)-(4), (6)-(7) (2006). The warden or the

warden's designee "shall review panel decisions to assure compliance with the procedures, rights and obligations set forth in this rule[,]" and may approve, modify or reject a panel's determination of guilt and the penalty imposed.  O.A.C. § 5120-9-08(M) (2006).

An inmate may appeal the RIB panel decision within fifteen calendar days from the inmate's receipt of the RIB panel's disposition.  O.A.C. § 5120-9-08(N) (2006).  In the event of an appeal, the warden or the warden's designee "shall review the RIB determination to determine whether it was supported by sufficient evidence, and that there was substantial compliance with applicable procedures, and that the disposition and any sanction imposed was proportionate to the rule violations." *Id.*

The inmate may also request that the ODRC director review the RIB decision under certain circumstances, including (1) where the inmate was found to have violated certain rules, including, *inter alia*, Rule 28; (2) "[t]he RIB decision as affirmed by the warden refers the inmate for either a security level review to consider an increase to level 3, 4 or 5; or privilege level review to consider placement in level 4B or 5B," or (3) "[t]he decision refers the inmate to the local control committee to consider placement." O.A.C. § 5120-9-08(O) (2006).  The ODRC director may also review any RIB decision that the director believes "presents issues that may have significant impact on the operation of the department." O.A.C. § 5120-9-08(Q) (2006).

### B.    Conduct Reports Issued at MaCI

Plaintiff was incarcerated at MaCI at all times relevant to the issues presented in this case until he was transferred to Ross Correctional Institution ("RCI") on February 1, 2007. *Verified*

14

*Complaint*, ¶¶ 2, 20 and 36, Doc. No. 4.[4]  Plaintiff has owned his own typewriter since he was initially incarcerated in 1985, *i.e.*, prior to and during his time at MaCI.  *Plaintiff's First Declaration*, ¶ 14.  "At no time has any corrections staff ever told [plaintiff] that [he] was not permitted to use [his] typewriter to type legal documents for someone else, or bearing someone else's name."  *Id.*  On occasion, plaintiff typed documents for other people, including corrections staff, and drafted documents that contained another person's name.  *Id.*

### 1.  Violation Related to Rule 28

In a conduct report dated August 21, 2006, plaintiff was charged with violating Rule 28 (relating to forging, possessing, or presenting forged or counterfeit documents).  *Exhibits B-1* and *B-2*, attached to *Haskins Declaration*.  The conduct report states that

> [o]n 8-21-06 The Attorney Generals [sic] office contacted me [unit manager's initials] about 2 signatures on different Documents which where [sic] Presented to Them by Inmate Whiteside 184-313.  One of These Documents was Addressed to Marcie Henceroth, U.M.A.  Subject Matter: Suspensions. After Review of This Document "Not ONLY WAS IT NOT My Signature, but I Had Never typed it Either, Therefore it is a Forged Document."

*Exhibit B-2*, p. 1, attached to *Haskins Declaration*.  The RIB panel issued its disposition on August 28, 2006, finding that plaintiff had violated Rule 28.  *Exhibit B-2*, p. 2.  The RIB panel imposed disciplinary control and recommended plaintiff's placement in local control, a security review and an institutional transfer.  *Id.*

---

[4]Plaintiff later filed the *Verified Amended Complaint*, Doc. No. 15, which incorporated by reference the initial *Verified Complaint* and included additional parties and claims.  Accordingly, the facts alleged in the original *Verified Complaint* remain viable.

Plaintiff appealed this disposition to the ODRC director who upheld the decision. *Haskins Declaration*, ¶ 5; *Exhibit B-1*, attached thereto. *See also Verified Complaint*, ¶ 24 (referencing time spent in segregation).

### 2. Violations Related to Rules 50 and 51

Between September and November 2006, the RIB panel concluded that plaintiff had violated Rule 50 (possession of property of another) and/or Rule 51 (possession of contraband, including any article knowingly possessed which has been altered or for which permission has not been given) seven times, with all but one of the offenses occurring on September 22, 2006. *Haskins Declaration*, ¶ 6; *Exhibits B-1* and *B-3*, attached thereto. In particular, as to one of those offenses, the RIB panel concluded that plaintiff violated Rule 50 (possession of property of another) after a search of his property revealed that he possessed the legal materials of other inmates:

> During the search of inmate Whiteside's property, several other inmates [sic] cases were found in his personal property. Per [ODRC Policy] 59-LEG-01 it is not permissible for inmates to maintain possession of leagal [sic] materials of another inmate. Inmate Whiteside admitted that some inmates have sent him their leagal [sic] material from other institutions for him to assist. He also admitted that he has assisted all inmates cases on the conduct report.

*Exhibit B-3*, p. 2, attached to *Haskins Declaration*. In reaching this decision, the RIB panel relied on the conduct report and the testimony of plaintiff and defendant Haskins. *Id*. The RIB panel ordered plaintiff to "15 days [in disciplinary control] to run concurrent with his local control placement." *Id*.

In another instance, the RIB panel concluded that plaintiff had violated Rules 50 and 51 after a search of his property revealed that

he possessed, *inter alia*,[5] the legal materials of other inmates:

> Inmate did have in his personal property several items which
> are contraband.  He also had several items that belongs
> [sic] to other inmates.  Inmate admits that the stamps was
> [sic] his and that he had received them through the mail.
> The confiscated items were brought into the RIB room.
> Whiteside admitted that all confiscated items were his
> except for the medication [that was not prescribed to him].
> Radio serial # did match (BS11A2020275) unit file, however
> it has been altered.

*Id*. at 10.  In reaching this decision, the RIB panel relied on the

confiscated property, the conduct report and the testimony of

plaintiff and defendant Haskins.  *Id*.  The RIB panel ordered plaintiff

to "15 days [in disciplinary control].  Run concurrent with local

control.  Property belonging to others will be returned.  Property

over possession limits will be mailed out at inmates [sic] expense

along with altered Panasonic radio.  All other property that can't be

returned to rightful owner will be destroyed."  *Id*.

## III. PROCEDURAL BACKGROUND

As discussed *supra*, the Magistrate Judge previously set forth in

detail the lengthy procedural history in this case.  *Order and Report*

*and Recommendation*, Doc. No. 148.  Plaintiff's only remaining claims

assert that Rules 28, 50 and 51 under O.A.C. § 5120-9-06 are vague and

lack fair notice in violation of the Due Process Clause.  *Opinion and*

*Order*, Doc. No. 66.  Plaintiff seeks declaratory and injunctive relief

and asks for "punitive damages in excess of $10,000 against all

defendants WITH ACTUAL AMOUNT to be determined by a jury[.]"  *Amended*

---

[5]The items confiscated are detailed at length.  *Id*. at 9.

*Verified Complaint*, ¶¶ A, B, C, E.[6]

        As discussed *supra*, *Defendants' Motion for Summary Judgment* is fully briefed.  After *Plaintiff's Motion for Summary Judgment* was filed, *Defendants' (Lambert, Willingham, Terrill, Perry, Stanley, Gossard, Collins, Clark, Lazaroff, Haskins, Workman) Memorandum in Opposition to Plaintiff's Motion for Summary Judgment*, Doc. No. 187 ("*Defendants' Memo. in Opp.*"), was filed.  With the filing of *Plaintiff's Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment*, Doc. No. 189 ("*Plaintiff's Reply*"), this matter is now ripe for resolution.

**IV.   STANDARD FOR SUMMARY JUDGMENT**

        The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the

------

        [6]This Court previously dismissed all claims except plaintiff's due process claims based on O.A.C. § 5120-9-06(C)(28), (50) and (51) as against the ODRC and MaCI defendants.   *Order and Report and Recommendation*, Doc. No. 54, pp. 27-31, 36; *Opinion and Order*, Doc. No. 66.

existence of an element essential to that party's case and on which
that party will bear the burden of proof at trial.  *Celotex Corp. v.
Catrett,* 477 U.S. 317, 322 (1986).  The mere existence of a scintilla
of evidence in support of the opposing party's position will be
insufficient; there must be evidence on which the jury could
reasonably find for the opposing party.  *Anderson,* 477 U.S. at 251.

      The party moving for summary judgment always bears the initial
responsibility of informing the district court of the basis for its
motion, and identifying those portions of the record which demonstrate
the absence of a genuine issue of material fact.  *Catrett,* 477 U.S. at
323.  Once the moving party has met its initial burden, the burden
then shifts to the nonmoving party who "must set forth specific facts
showing that there is a genuine issue for trial." *Anderson,* 477 U.S.
at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino
Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party
must present evidence that creates a genuine issue of material fact
making it necessary to resolve the difference at trial").  "Once the
burden of production has so shifted, the party opposing summary
judgment cannot rest on the pleadings or merely reassert the previous
allegations.  It is not sufficient to 'simply show that there is some
metaphysical doubt as to the material facts.'"  *Glover v. Speedway
Super Am. LLC,* 284 F.Supp.2d 858, 862 (S.D. Ohio 2003)(citing
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586
(1986)).  Instead, the non-moving party must support the assertion
that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

      In ruling on a motion for summary judgment "[a] district court is
not ... obligated to wade through and search the entire record for
some specific facts that might support the nonmoving party's claim."

*Glover,* 284 F.Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  *Id. See also* Fed. R. Civ. P. 56(c)(3).

## V.    *LEAMAN* DOCTRINE

Defendants originally argued that plaintiff's claims are barred because he previously filed a lawsuit in the Ohio Court of Claims based on the same acts and omissions as are presented in this case. *Defendants' Motion for Summary Judgment*, pp. 4-5 (citing, *inter alia*, *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951-52 (6th Cir. 1987) (en banc), *cert denied*, 487 U.S. 1204 (1988)).  After *Plaintiff's Memo. in Opp.* was filed, however, defendants concede that plaintiff is correct that "the Leaman Doctrine is not relevant to the remaining issue in this case." *Defendants' Reply*, p. 4.  Based on this record, defendants are not entitled to summary judgment under *Leaman*, 825 F.2d 951-52.

## VI.   EXHAUSTION

Defendants also contend that plaintiff failed to exhaust his administrative remedies as to his claims related to his RIB convictions for violations of Rules 50 and 51.  *Defendants' Motion for Summary Judgment*, pp. 5-7. The Prison Litigation Reform Act of 1996 ("PLRA") requires a prisoner to exhaust administrative remedies available to the prisoner prior to filing an action in a federal court.  42 U.S.C. § 1997e(a).

20

> No action shall be brought with respect to prison conditions under [section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*.  Failure to exhaust is considered an affirmative defense and defendants bear the burden of proving non-exhaustion.  *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

Here, several conduct reports were issued to plaintiff while he was incarcerated at MaCI in 2006.  *Exhibits B-1*, *B-2* and *B-3*, attached to *Defendants' Motion for Summary Judgment*.  As discussed *supra* in more detail, a hearing officer initially screens each conduct report and may either dispose of the report or refer the charged violation to the RIB for a hearing.  O.A.C. § 5120-9-07(D)-(F), (H).  RIB panel decisions are appealable to the warden of the institution.  O.A.C. § 5120-9-08(N).  An inmate may thereafter appeal the warden's decision to the ODRC director under the following circumstances:  (1) the inmate violated, *inter alia*, Rule 28; or (2) "[t]he RIB decision as affirmed by the warden refers the inmate for either a security level review to consider an increase to level 3, 4 or 5; or privilege level review to consider placement in level 4B or 5B"; or (3) "[t]he decision refers the inmate to the local control committee to consider placement."  O.A.C. § 5120-9-08(O).  The inmate grievance process, *see* O.A.C. § 5120-9-31, which is a separate process "designed to address inmate complaints related to any aspect of institutional life that directly and personally affects the grievant[,]" is not "an additional or substitute appeal process for hearing officer decisions [or] rules infraction board decisions[.]"  O.A.C. § 5120-9-31(A), (B).

Defendants argue that plaintiff failed to exhaust his

administrative remedies because he failed to appeal his convictions for violating Rules 50 and 51 to the highest level in the prison system, namely, to the ODRC director. *Defendants' Motion for Summary Judgment*, pp. 5-7 (citing *inter alia*, O.A.C. §§ 5120-9-07 & 08; *Haskins Declaration* and exhibits attached thereto). Defendants also contend that plaintiff "has not exhausted the regular grievance procedure for non-RIB proceedings (Ohio Admin. Code 5120-9-31) as to any of his complaints regarding Rules 28, 50 and 51." *Id*. at 7 (citing *Declaration of Suzanne Evans* ("*Evans Declaration*"), attached as *Exhibit C* to *Defendants' Motion for Summary Judgment*.

In response, plaintiff argues that the inmate grievance process is inapplicable in this case, *Plaintiff's Memo. in Opp.*, pp. 2-3 (citing O.A.C. § 5120-9-31(B)), and avers that he has exhausted his administrative remedies. *Id*. at 3 (citing *Plaintiff's First Declaration*, ¶8; *Exhibits B-4, E-6* and *F-6*, attached to *Plaintiff's Memo. in Opp.*). Defendants concede in reply that "[p]laintiff is correct that he cannot appeal a decision of the Rules Infraction Board through the grievance process." *Defendants' Reply*, p. 4. However, defendants insist that plaintiff failed to exhaust his administrative remedies through the separate appeal procedure for RIB decisions because he did not appeal all his convictions to the ODRC director. *Id*.

In reviewing the arguments and evidentiary record in this case, the Court finds no dispute that plaintiff exhausted his administrative remedies as to certain of the conduct reports, *i.e.*, the reports related to violations of Rule 28 (with an offense date of August 21, 2006) and of Rule 51 (with an offense date of November 16, 2006). *See*

22

*Exhibit B-1*, attached to *Defendants' Motion for Summary Judgment*.
However, it is unclear whether plaintiff exhausted his administrative
remedies as to the remaining six conduct reports related to violations
of Rules 50 and 51.  *Id*. (reporting case status of each as "CLOSED -
Warden's Decision (No Appeal/Completed)").  Other than asserting in
conclusory fashion that plaintiff failed to exhaust his remedies,
defendants offer no argument or evidence that these decisions were in
fact decisions that were even appealable to the ODRC director.
Although defendants proffer copies of some of these conduct reports
and RIB decisions, *see Exhibit B-3*, attached to *Defendants' Motion for
Summary Judgment*, they do not attach copies of all of such reports or
RIB decisions.  Even if they had done so, the RIB decisions do not
include enough information to enable the Court to determine if the
decisions were appealable under the provisions of O.A.C. § 5120-9-
08(O).  In short, defendants have not carried their burden of
establishing that plaintiff failed to exhaust available administrative
remedies. Accordingly, defendants' argument that plaintiff failed to
exhaust his administrative remedies is not well taken.

**VII. QUALIFIED IMMUNITY**

Defendants argue that they are entitled to qualified immunity for
monetary liability arising in connection with plaintiffs' remaining
claims.  *Defendants' Motion for Summary Judgment*, pp. 8-9.  The
doctrine of qualified immunity provides that, in civil suits for
monetary damages, government officials acting in their official
capacity and performing discretionary functions are generally shielded
from liability "'insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a reasonable

23

person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity involves a two-step inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

Here, defendants do not argue that the alleged constitutional violation was not "clearly established" under the second prong of a qualified immunity analysis. *Defendants' Motion for Summary Judgment*, pp. 8-9. Defendants instead base their qualified immunity argument on the first prong, which asks whether a constitutional violation has occurred. *Id.*[7] Accordingly, resolution of the motions for summary judgment on plaintiff's remaining claims turns on whether there is a genuine issue of material fact as to whether a constitutional violation occurred.

## VIII.    DUE PROCESS

Plaintiff alleges that Rules 28, 50 and 51 are vague and lack fair notice in violation of the Due Process Clause of the Fourteenth Amendment. *Verified Complaint*, ¶¶ A, 24, 26. The Due Process Clause provides in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law[,]" U.S. Const.

---

[7]Defendants also argue that they are entitled to the protection of qualified immunity because plaintiff "cannot show. . . exhaustion, or the fact that the case is not barred by *Leaman*." *Id.* at 9. However, because the Court rejected those arguments for the reasons discussed *supra*, the Court will not address those arguments again here.

amend XIV, and contains a procedural component and a substantive
component.  "Procedural due process is traditionally viewed as the
requirement that the government provide a 'fair procedure' when
depriving someone of life, liberty, or property[.]"  *EJS Props., LLC
v. City of Toledo*, No. 10-4471, 2012 U.S. Dist. LEXIS 18624, at *14
(6th Cir. Sept. 5, 2012).  Conversely, "substantive due process
'protects individual liberty against certain government actions
regardless of the fairness of the procedures used to implement them.'"
*Id*. (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125
(1992)).  In addition, "[t]he Due Process Clauses of the Fifth and
Fourteenth Amendments provide the constitutional foundation for the
void-for-vagueness doctrine."  *Belle Maer Harbor v. Charter Twp. of
Harrison*, 170 F.3d 553, 556-57 (6th Cir. 1999).  Here, construing this
*pro se* plaintiff's filings liberally, *see*, *e.g.*, *Haines v. Kerner*, 404
U.S. 519, 520-21 (1972), the Court concludes that plaintiff asserts
claims based on procedural due process and on the void-for-vagueness
doctrine.  The Court will address each in turn.

Plaintiff complains that Rule 28, 50 and 51 violated his due
process rights because he had no notice that the conduct in which he
engaged violated those rules and that he had previously engaged in the
same conduct with no warning or punishment.  In determining whether
defendants violated plaintiff's due process rights, the Court first
determines whether defendants deprived plaintiff of a liberty or
property interest protected by the Due Process Clause and, if so,
"'whether the procedures attendant upon that deprivation were
constitutionally sufficient.'"  *Bazzetta v. McGinnis*, 430 F.3d 795,
801 (6th Cir. 2005) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490

25

U.S. 454, 460 (1989)).

Prisoners have limited liberty interests because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. at 485.  An inmate's only liberty interest protected by the Due Process Clause is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Plaintiff's rambling and convoluted summary judgment filings, which refer to statements and arguments presented in other filings and multiple documents, are difficult to follow.  However, the Court understands plaintiff to complain that:

> (1) he was placed in segregation, *Verified Complaint*, ¶¶ 24, 29, 35; *Plaintiff's Motion for Summary Judgment*, p. 4;

> (2) he was transferred to another prison, *Verified Complaint*, ¶¶ 34, 36; *Declaration in Support of Plaintiff's Motion for Summary Judgment* ("*Plaintiff's Second Declaration*"), ¶ 18, attached to *Plaintiff's Motion for Summary Judgment*;[8]

> (3) he was denied parole, *Plaintiff's Second Declaration*, ¶ 18; Doc. No. 193, p. 2; *Plaintiff's Memo. in Opp.*, p. 4; *Plaintiff's Reply*, p. 2;

> (4) he received death threats, *Plaintiff's Memo. in Opp.*, p. 3 (sworn to as true and correct, *Plaintiff's First Declaration*, ¶ 5); *Plaintiff's Second Declaration*, ¶ 18;

> (5) defendants' discovery responses cannot explain or justify the RIB decision that he violated Rule 28 (forgery), *Plaintiff's Memo. in Opp.*, p. 4; *Plaintiff's Reply*, p. 3; and

---

[8]Although plaintiff denies that he intends to contest his "transfer from one prison to another[,]" *Plaintiff's Motion to Strike*, p. 1, the Court will nevertheless address the transfer issue in light of plaintiff's repeated complaints about that transfer.

(6) "the OSHP did not conduct the usual investigation," *Plaintiff's Memo. in Opp.*, p. 4; *Plaintiff's Reply*, p. 2.

Turning, first, to plaintiff's complaint relating to his placement in segregation, the Court emphasizes that segregation does not constitute an "atypical and significant hardship." *See Order and Report and Recommendation*, pp. 22-24 (citing, *inter alia*, *Sandin*, 515 U.S. at 484), *adopted and affirmed by Opinion and Order*, Doc. No. 66.

Second, to the extent that plaintiff complains about being transferred from MaCI, the Court notes that prisoners have no constitutionally protected liberty interest in being assigned to any particular institution. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at 225. Even if the inmate believes that conditions at the transferee institution are more onerous, prison officials have the discretion, under the Constitution, to authorize transfers so long as the conditions at the transferee prison do not impose "atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484. *Cf. Wilkinson v. Austin*, 545 U.S. 209, 222 (2005)(recognizing an inmate's liberty interest in not being transferred to Ohio's "supermax" institution without due process of law). Here, no liberty interest is implicated in plaintiff's transfer from MaCI (where the rule violations occurred) to RCI, which is not a "supermax" facility. *Id*.

Third, although plaintiff believes that he was denied parole

because of the rules violations at MaCI, it is significant that the United States Constitution does not guarantee an inmate's release on parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007).

Fourth, plaintiff complains in conclusory fashion that he has received "death threats," but he provides no details about the substance of the threats, who made the threats, when the threats were made, why the threats were made or how the threats relate to enforcement of Rules 28, 50 and 51 while he was incarcerated at MaCI. *See Plaintiff's Memo. in Opp.*, p. 3 ("The conduct reports containing vague violations that lack fair notice have gotten [plaintiff]. . . subjected to death threats[.]"); *Plaintiff's Second Declaration*, ¶ 18 ("Because of the vagueness and lack of fair notice of Rules 28, 50 and 51, and their unconstitutional uses against me. . . I have had death threats against me[.]").  These conclusory and self-serving assertions are not sufficient at the summary judgment stage. *See*, *e.g.*, *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (concluding that a party may not survive summary judgment by relying on "conclusory statements" unsupported by specific facts); *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) (stating that "affidavits [that] merely repeated the [plaintiff's] vague and conclusory allegations. . . were insufficient to generate a genuine issue of material fact").  Finally, the Court notes that even if plaintiff received death threats, his prior filings establish that plaintiff complained of death threats in only 2009, well after enforcement of Rules 28, 50 and 51 at MaCI in 2006. *See Motion of Plaintiff Whiteside for Temporary Restraining Order and/or Preliminary Injunction Based Upon, Inter Alia, Death*

28

*Threats Against Him*, Doc. No. 37 (seeking order prohibiting transfer to another prison because of alleged death threats); *Order and Report and Recommendation*, Doc. No. 54, pp. 33-34 (recommending that such motion be denied and noting, *inter alia*, that it appeared that the alleged death threats, if made, originated at RCI), *adopted and affirmed by Opinion and Order*, Doc. No. 66. Accordingly, plaintiff has offered no evidence that he has received death threats resulting from a 2006 enforcement of Rules 28, 50 and 51 at MaCI, *i.e.*, that he suffered an atypical and significant hardship.

Fifth, plaintiff complains that defendants are unable to explain the basis for the finding that plaintiff violated Rule 28 (forgery). *Plaintiff's Memo. in Opp.*, p. 4; *Plaintiff's Reply*, p. 3. To the contrary, however, the record establishes that plaintiff's conviction in this regard was based on the RIB's consideration of the conduct report, inmate testimony and documents. *Exhibit B-2*, attached to *Defendants' Motion for Summary Judgment*. This evidence is therefore sufficient. *See Superintendent, Massachusetts Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 455 (1985)("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board[.]"). *See also Young v. Tennessee Dep't of Corr.*, 863 F.2d 50 (6th Cir. 1988) (affirming *sua sponte* dismissal of plaintiff prisoner's due process claim where "some evidence" existed to support the disciplinary board's decision). In any event, this complaint is unavailing in the absence of evidence that plaintiff's conviction resulted in an "atypical and significant hardship." *See Sandin, supra*.

Finally, plaintiff asserts that the Ohio State Highway Patrol

29

"did not conduct the usual investigation[.]" *Plaintiff's Memo. in Opp.*, p. 4; *Plaintiff's Reply*, p. 2. *See also Plaintiff's Second Declaration*, ¶ 12 (representing that, in an unrelated forgery case involving another inmate, "matters regarding the crime of forgery [we]re turned over to the Ohio State Highway Patrol (OSHP) for [its] investigation"). Although it is not entirely clear what plaintiff intends by this allegation, the Court assumes that plaintiff proposes to claim a liberty interest in an Ohio State Highway Patrol investigation. However, plaintiff cites to no authority for such a right and this Court is aware of no such right. *Cf. Walker v. Mich. Dep't of Corr.*, No. 04-1347, 128 Fed. Appx. 441, at *445 (6th Cir. April 1, 2005) (noting that there "is no constitutionally protected due process right to unfettered access to prison grievance procedures"); *Carlton v. Jondreau*, No. 03-1430, 76 Fed. Appx. 642, at *644 (6th Cir. Sept. 16, 2003) (finding that inmate plaintiff failed to state a claim where, *inter alia*, inmate plaintiff alleged that a deputy warden "had failed to properly investigate his grievance"); *See also Jackson v. Hamlin*, No. 02-2040, 61 Fed. Appx. 131, at *132 (6th Cir. Mar. 11, 2003) ("[A] prisoner has no constitutional right to be free from false accusations of misconduct.") (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).

In short, the Court concludes that plaintiff has not presented evidence of a violation of his procedural due process rights.

Plaintiff also argues that Rules 28, 50 and 51 are vague and lack fair notice in violation of the Due Process Clause. *Plaintiff's Memo.*

*in Opp.*, pp. 4-5 ("adopt[ing] herein by reference Exhibit K[9] attached and the same rationale and argument presented in "II. <u>The Law and Issues Involved</u>"); *Plaintiff's Motion for Summary Judgment*, pp. 4-5; *Plaintiff's Reply*, p. 3; *Plaintiff's Motion to Strike*, pp. 1-2. "Although the vagueness doctrine was originally used to invalidate – on due process grounds – penal statutes that failed to 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited,' *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), courts have frequently applied it in the First Amendment context." *Jones v. Caruso*, 569 F.3d 258, 276 (6th Cir. 2009). Therefore, "[t]he stringency of the vagueness test depends upon the context of the challenge." *Condon v. Wolfe*, No. 06-4205, 310 Fed. Appx. 807, at *821 (6th Cir. Feb. 12, 2009) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)). Where a challenged statute or rule neither imposes criminal penalties nor implicates First Amendment rights, a plaintiff may not mount a facial challenge to that statute or rule; however, that plaintiff may challenge the statute or rule as it is applied to that plaintiff. *Simon v. Cook*, No. 06-6514, 261 Fed. Appx. 873, at *883 (6th Cir. Jan. 30, 2008) ("Therefore, since the statute does not impose criminal penalties and [plaintiff's] vagueness challenge does not arise from the First Amendment, a facial challenge is inappropriate, and Simon may only challenge the statute as it was applied to him."); *United States v. Blaszak*, 349 F.3d 881, 887 (6th

---

[9]*Exhibit K* attached to *Plaintiff's Memo. in Opp.* appears to be *Plaintiff's Status Report Pursuant to Court's December 28, 2011, Order #143*, separately filed as Doc. No. 147.

Cir. 2003) ("Statutes not reaching constitutionally protected activity will therefore be evaluated 'in light of the facts of the particular case at hand,' rather than for their facial validity.") (quoting *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999)).

Here, there is no argument or evidence that Rules 28, 50 and 51 impose criminal sanctions.  However, plaintiff raises, apparently for the first time in opposing summary judgment, the argument that he "has a clearly established First Amendment right to provide legal assistance to others in prison." *Plaintiff's Memo. in Opp.*, p. 3 (citing *Newell v. Sauser*, 79 F.3d 115 (9th Cir. 1996)[10] and O.A.C. § 5120-9-20 (addressing "[v]isits by attorneys and inmate access to legal services").  This Court disagrees.  It is well established in this circuit that "an inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (*en banc*).  Accordingly, plaintiff may challenge Rules 28, 50 and 51 only as they were actually applied to plaintiff.

Although due process forbids excessively vague laws, prison regulations do not require the same degree of specificity as do laws applicable to free citizens:

> Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions.  This results from the fundamental difference between normal society and prison society.  The maintenance of strict security and discipline, with its

---

[10]Plaintiff's reliance on *Newell* in this regard is misplaced because *Newell* did not address a First Amendment issue.  *Newell*, 79 F.3d at 117 n.2.

32

> unfortunate but unavoidable circumscription of an inmate's
> freedom to act, is essential to safe and efficient prison
> administration.  As such, it is nearly impossible for prison
> authorities to anticipate, through narrowly drawn
> regulations, every conceivable form of misconduct which
> threatens prison security.

*Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992) (citing *Meyers v.
Alldredge*, 492 F.2d 296, 310 (3rd Cir. 1974) (citations omitted).  *See
also Al-Jabbar A'La v. Murray*, No. 93-5794, 1993 U.S. App. LEXIS
33505, at *3 (6th Cir. Dec. 17, 1993) ("[P]rison officials cannot
anticipate every conceivable form of misconduct and draw narrow
regulations to satisfy such a notice requirement.").

With the foregoing standard in mind, the Court will address each
rule in turn.

**A.    Rule 28**

Rule 28 forbids "[f]orging, possessing, or presenting forged or
counterfeit documents."  Plaintiff argues that this rule lacks fair
notice because "[t]he only proof required" for an inmate to be found
guilty "is a staff member denying his or her signature." *Plaintiff's
Memo. in Opp.*, p. 5; *Plaintiff's First Declaration*, ¶10; *Plaintiff's
Second Declaration*, ¶ 12.  Plaintiff specifically complains that Rule
28 contains "no provision that allows an inmate to know that the
inmate does not have to know that an item/document is forged in order
to be found guilty." *Plaintiff's Motion to Strike*, pp. 1-2;
*Plaintiff's Memo. in Opp.*, p. 5.  He represents that, contrary to the
charge in the conduct report issued to plaintiff, *Exhibit B-2*,
attached to *Defendants' Motion for Summary Judgment*, plaintiff did not
submit a forged document and was never told that he could be charged
with, and found guilty of, forgery even though he did not know that an

33

item was forged. *See*, *e.g.*, *Plaintiff's First Declaration*, ¶¶ 9-12.

Plaintiff therefore argues that his rights were violated because

"[d]ue process requires lawful proof that a forgery was committed."

*Plaintiff's First Declaration*, ¶ 10.

As an initial matter, this Court disagrees with plaintiff's

characterization of Rule 28 as vague because it could result in a rule

infraction merely upon a staff member's denial of the authenticity of

his or her signature. The Ohio Administrative Code specifically

requires that "some evidence" support a finding that an inmate

violated a rule of conduct:

> No inmate shall be found guilty of a violation of a rule of
> conduct without some evidence of the commission of an act
> **and the intent to commit the act.**
>
>> (1) The Act must be beyond mere preparation and be
>> sufficiently performed to constitute a substantial
>> risk of its being performed.
>>
>> (2) "Intent" may be express, or inferred from the
>> facts and circumstances of the case.

O.A.C. § 5120-9-06(D) (2006)(emphasis added). *Cf. United States v.*

*Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (stating that a court looks

to "'the language and design of the statute as a whole'"). Plaintiff's

contention that the rule is too vague to pass constitutional muster is

simply without merit. The fact that plaintiff disagrees with the RIB

panel's decision does not militate a contrary conclusion.

**B.   Rule 50**

Rule 50 forbids the "[p]ossession of property of another."

Plaintiff argues that this rule is vague because the words "property"

and "another" are not defined. *Plaintiff's Motion for Summary*

*Judgment*, p. 4; *Plaintiff's Second Declaration*, ¶ 15; *Plaintiff's*

*Reply*, p. 3.  However, as applied to plaintiff specifically,[11] the RIB panel concluded that plaintiff violated Rule 50 when a search of his property revealed items, including legal materials, belonging to other individuals.  *Exhibit B-3*, pp. 2, 10.  Plaintiff contends that, because he has "been a law clerk and/or law library aide in at least two prisons," defendants should have known that seizing such legal papers was "unlawful."  *Plaintiff's First Declaration*, ¶ 16 (citing *Newell v. Sauser*, 79 F.3d 115 (9th Cir. 1996)).  In *Newell*, the plaintiff was a prison law librarian and was permitted to keep a computer in his cell.  *Newell*, 79 F.3d at 116.  Computer-generated legal materials written by Newell on behalf of other inmates were seized from his cell.  *Id*.  The disciplinary committee found Newell guilty of violating a prison regulation that prohibited the possession of "anything not authorized for retention or receipt by the prisoner, and not issued through regular facility channels."  *Id*.  The disciplinary committee imposed a verbal reprimand, which became part of Newell's prison record and available for parole board review.  *Id*.  In concluding that the prison regulation failed to provide adequate notice that his conduct was forbidden, the court in *Newell* noted that, because Newell had been designated as a law librarian and was permitted to have a computer in his cell, he had an implied right to produce computer-generated documents.  *Id*. at 118.  Accordingly, the *Newell* court concluded, prison officials were not entitled to qualified immunity because "[a] reasonable officer would have known

---

[11]For the reasons discussed *supra*, the Court will not address plaintiff's arguments and evidence that are directed to a facial challenge to this rule.

that seizing computer-generated legal papers from his cell was unlawful." *Id*.

However, plaintiff – unlike the plaintiff in *Newell* – has not established that he was a prison law librarian with an attendant right to retain other inmates' legal materials. Although plaintiff claims that he has "been a law clerk and/or law library aide in at least two prisons[,]" *Plaintiff's First Declaration*, ¶ 16, this general assertion does not establish that plaintiff was acting as such in 2006 at MaCI when he was charged with violating Rule 50. The mere fact that plaintiff, who is himself a prodigious litigator, was permitted to keep a typewriter in his cell does not mean that he had an enforceable right to keep or generate the legal materials of other inmates. *Cf. Thaddeus-X*, 175 F.3d at 395 ("[A]n inmate does not have an independent right to help other prisoners with their legal claims").

Plaintiff nevertheless insists that, like the plaintiff in *Newell,* he had no notice that Rule 50 prohibited his possession of legal documents relating to other inmates. However, unlike the prison regulation at issue in *Newell*, the plain language of Rule 50 explicitly forbids the possession of all property of another. Although, as plaintiff points out, Rule 50 does not specifically forbid the possession of others' *legal documents*, "prison officials cannot anticipate every conceivable form of misconduct and draw narrow regulations to satisfy such a notice requirement." *Al-Jabbar A'La v. Murray*, No. 93-5794, 1993 U.S. App. LEXIS 33505, at *3 (6th Cir. Dec. 17, 1993). *See also Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992) ("Indeed, "[t]he maintenance of strict security and discipline,

with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration.").

Moreover, there is evidence that plaintiff in fact had notice that inmates are not permitted to keep the legal materials of other inmates:  In concluding that plaintiff had violated Rule 50, the RIB noted that "[p]er 59-LEG-01 it is not permissible for inmates" to keep legal materials of other inmates.  *Exhibit B-3*, p. 2, attached to *Defendants' Motion for Summary Judgment*.  *See also* O.A.C. § 5120-9-06(A) (2006) ("The disciplinary violations defined by this rule shall address acts that constitute an immediate and direct threat to the security or orderly operation of the institution, or to the safety of its staff, visitors and inmates (including the inmate who has violated the rule,) *as well as other violations of institutional or departmental rules and regulations*.") (emphasis added); *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (stating that a court looks to "'the language and design of the statute as a whole'").  In sum, the Court cannot conclude that Rule 50 is impermissibly vague as applied to plaintiff.

**C.   Rule 51**

Rule 51 forbids the "[p]ossession of contraband, including any article knowingly possessed which has been altered or for which permission has not been given."  In arguing that this rule is vague, plaintiff advances multiple examples of how an inmate could unwittingly violate this rule: *e.g.*, using a sewing kit to alter items or creating arts and crafts.  *See Exhibit K*, pp. 3-5, attached to *Plaintiff's Memo. in Opp.*; *Plaintiff's Second Declaration*, ¶ 16;

*Plaintiff's Motion to Strike*, p. 2.  However, the RIB panel at MaCI
did not find plaintiff guilty of violating Rule 51 for possessing
sewing kits or arts and crafts.  *Exhibit B-3*, pp. 4, 6, 8, 10,
attached to *Defendants' Motion for Summary Judgment*.  Rather,
plaintiff was found to be in possession of a "sheet of gold seals[,] .
. . various notary stamps from different states . . . [and] a
notarized form with the same stamp from the State of California . . .
."  *Exhibit B-3*, p. 4.  Plaintiff was also found to be in possession
of, *inter alia*, "letterhead . . . from NAACP (with official logo) . .
. and letterhead that appears from the Court of Claims of Ohio." *Id.*
at 8.  Finally, plaintiff was found to be in possession of a radio,
the serial number of which "ha[d] been altered." *Id.* at 10.
Plaintiff will not be heard that he had no reasonable notice that his
possession of these items violated Rule 51, particularly where, as
here, the rule addresses "acts that constitute an immediate and direct
threat to the security or orderly operation of the institution, or to
the safety of its staff, visitors and inmates . . . ." O.A.C. § 5120-
9-06(A)(2006).  In sum, plaintiff has offered nothing to establish
that Rule 51 is unconstitutionally vague as applied to him.

Having concluded that no constitutional violation has occurred,[12]
the Court need not address the parties' remaining arguments, *i.e.*,
whether plaintiff may recover punitive damages under the PLRA.


**WHEREUPON**, *Plaintiff's Motion for Extension*, Doc. No. 194, is

---

[12]Even if the Court had found a constitutional violation, defendants
would still be entitled to qualified immunity because they "reasonably relied
on and applied valid regulations[.]" *See Wolfel v. Morris*, 972 F.2d 712, 720
(6th Cir. 1992).

**GRANTED**.  *Plaintiff's Motion to Strike Defendants' Reply (Doc #184)*, Doc. No. 188, is **DENIED**.  *Defendants' (Lambert, Willingham, Terrill, Perry, Stanley, Gossard, Collins, Clark, Lazaroff, Haskins, Workman) Motion for Summary Judgment*, Doc. No. 157, is **GRANTED** and, *Plaintiff's Summary Judgment Motion*, Doc. No. 182, is **DENIED**.  The remaining claims against the remaining defendants are **DISMISSED**.

The Clerk shall enter **FINAL JUDGMENT** in favor of defendants.


Date: September 25, 2012            <u>        s/James L. Graham        </u>
                                    James L. Graham
                                    United States District Judge